[File No. 6809.]

J. M. DOCKTER, Respondent, v. SHERIDAN COUNTY, NORTH DAKOTA, a Public Corporation, and Melford Dalos and Edwin Dalos, Appellants.

(10 NW(2d) 485)

608

*George Thom, Jr.,* for appellant.
*F. E. McCurdy,* for respondent.

NUESSLE, J. This action was brought because of the conflicting claims of the plaintiff Dockter and the defendants Dalos to a quarter section of tax deed land advertised for sale by the defendant Sheridan County and which the parties above named claimed to have bought from the said county.

The case was tried to the court without a jury. Judgment was entered for the plaintiff and the defendants appealed and demanded a trial de novo in this court.

Chapter 235, Session Laws 1939, provides for the sale by counties of lands forfeited to them on account of nonpayment of taxes. Those portions of said chapter with which we are here concerned and which are contained in sections two and eight of the act in question, provide:

"Property so acquired by tax deed shall, under the direction of the board of county commissioners be sold at public or private sale, notice of which shall be given by posting at the front door of the courthouse thirty (30) days prior to the sale, a description of the parcels to be sold, and if the assessed value of such property exceeds $100.00, by publishing a notice of such sale in the official newspaper of the county, giving a description of the parcels to be sold, such notice to be published once not less than ten (10) days prior to the date of the sale. The description of all parcels of real estate to be sold at such sale shall be included in a single notice.

"Before publishing such notice the board of county commissioners shall appraise each lot or parcel of land and fix a tentative minimum sales price thereon. . . . Such sale shall take place at the county

seat on the third Tuesday of November in each year and shall continue from day to day until completed. .

"Each parcel shall be sold to the highest bidder therefor but not for a sum less than the minimum sales price finally fixed by the board of county commissioners. . . .

"If the sale is for part cash, the purchaser shall forthwith pay the amount of the first instalment of the bid to the county treasurer.

"Whereupon the purchaser shall be given a contract for deed, setting forth the terms of the said sale executed in the name of the county by the chairman of the board of county commissioners and the county auditor. . . .

"Any parcels of real estate not disposed of at the November sale hereinbefore provided for may be sold at any subsequent time by the county auditor provided that no such sale shall be made at a price less than the minimum sales price theretofore fixed by the board of county commissioners prior to the November sale. . . ."

The facts as found by the trial court, and they are well sustained by the record, are substantially as follows: The defendant Sheridan county took title to the quarter section of land here involved in default of payment of taxes. Pursuant to the statute above quoted, the county advertised this land, together with numerous other tracts of like character, to be sold to the highest bidder on November 19, 1939. Prior thereto the land had been appraised and its value fixed at $2 per acre, or $320 for the quarter section. The sale was conducted by the county auditor. Before it began he stated to those present the terms and conditions under which the land was being sold. When the land here involved was offered, plaintiff bid the amount at which it was appraised and there being no other bidders his bid was accepted. The chairman of the board of county commissioners, present at the sale, then gave him a pencil memorandum showing the description of the land, the name of the purchaser, and the amount of the bid for which the land was sold. The auditor, the clerk of the board of county commissioners who conducted the sale, made a memorandum in his record showing the sale to the plaintiff. Thereafter the plaintiff proceeded to the treasurer's office. The plaintiff says he went to make the required payment of one fourth of the purchase price. Many other purchasers

at the sale had preceded him. Plaintiff endeavored to crowd ahead of them but the treasurer told him it would be necessary to fall in line and the treasurer would deal with those there in the order in which they came. The plaintiff says that he then left without paying because he had some chores to do on his farm.

The sale was held on the 19th of November. Plaintiff did nothing further with respect to the matter and made no payment until December 3d following. In the meantime, between the date of the sale and the 3d of December, he had spoken to various people complaining that he had not been fairly treated; that the price of the land was too high in comparison with the value that was put on other lands; and had inquired as to whether the commissioners or the auditor could not make a reduction from the price he had bid. The board of county commissioners convened on December 3d. On that date the plaintiff and his son again went to the county seat, where the sale had been held. Plaintiff then made a payment to the treasurer of $80, one fourth of the amount bid for the land, and took a receipt for that amount from the treasurer as part payment on the purchase price. Afterwards he went to the room where the commissioners were in session and entered into a long argument with them respecting the value of the land and the price he had paid for it. His contention was that which he had theretofore made: that he had been treated unfairly and that the land was appraised too high. After some two hours of argument he told the commissioners he would not take the land at the price for which he had bid it in. They told him he had better take it; that he needed the land; that he had better sign the contract; and if he did not it would be too bad for him because there were others who would buy it. He said he would not take it and left in a huff. None of the county commissioners, nor the auditor who was also present at this meeting, was aware plaintiff had made the payment to the county treasurer and plaintiff did not tell them he had made it. Plaintiff's testimony is that he made the payment prior to his conference with the board. Neither the treasurer nor his deputy, to whom the money was paid, were able to remember the exact hour of the payment. And they did not advise either the auditor or the commissioners that it had been made. In any event, thereafter the county auditor on Decem-

ber 10th, unaware of plaintiff's payment, sold the land to the defendants Dalos for the price at which it was appraised, to wit: $320. These defendants made the payment of 25 per cent of the purchase price and the auditor and the chairman of the board of county commissioners executed with them the contract contemplated by the statute.

On December 17th plaintiff again came to the county seat. In the meantime he had heard that the land had been sold to the defendants Dalos. He went to the county auditor and sought to procure a contract for deed. This the auditor refused to give him. The county treasurer tendered a return of the $80 which had been paid, which tender the plaintiff refused. Plaintiff had had the land under rental contract from the county for the preceding year and continued in possession of it. Thereafter, when the defendants Dalos sought to enter into possession of the land, plaintiff refused to turn it over to them. He claimed he had a valid contract for the land with the county and brought this action to enforce this claim. The defendants Dalos, making a like claim, brought an action to enjoin plaintiff from interfering with their occupation of the land. The actions were consolidated and tried as one with the result stated above.

The district court held for the plantiff on the ground that the sale was completed when plaintiff's bid was accepted, that though the statute required him to make the payment to the county treasurer "forthwith," yet, under the circumstances the payment on December 3d was a sufficient compliance with this requirement and he having made the payment his rights were fixed as of the date of the sale. The court, however, indicated that, in his opinion, had the sale been made to the defendants Dalos in the interim between November 19th and December 3d, it would have been good, but nothing having been done during that time and plaintiff on December 3d having made the payment which was accepted by the county treasurer, his rights were fixed accordingly.

Since under the terms of the statute above quoted, where land is not sold at the November sale, the county auditor is authorized to enter into a private sale thereafter with any purchaser who will pay the appraised price, the only question in this case is whether under the circumstances shown it can be said that there was a completed sale prior

to December 10th when the defendants Dalos entered into the contract for the purchase of the land.

Of course the statute controls. Neither the board of county commissioners nor the auditor can deviate from its requirements, and so doing make a valid contract. The purchaser at a sale of land sold pursuant to the statute, must take notice of its terms. It provides that "if the sale is for part cash, the purchaser shall *forthwith* pay the amount of the first instalment of the bid to the county treasurer." It follows that unless such payment is made there is no completed sale. See, Cary v. Morton County, 57 ND 700, 223 NW·928. The county treasurer is not a party to the contract. He merely receives the money for the county. The fact that in the instant case the treasurer required the plaintiff to wait his turn when the latter came into the treasurer's office on the day of the sale can make no difference. Pursuant to the statute if the sale was not completed the auditor was authorized to sell at private sale for not less than the minimum price fixed for the land. So our inquiry is further narrowed down to the question as to whether the plaintiff made his payment "forthwith."

Webster's New Int Dict, 2d ed, gives the meaning of "forthwith" as "immediately; without delay; hence, within a reasonable time, promptly and with reasonable dispatch." Black's Law Dict, 3d ed, says: "When a statute enacts that an act is to be done 'forthwith' it means that the act is to be done within a reasonable time;" and Bouvier's Law Dictionary says "forthwith" means "As soon as by reasonable exertion confined to the object, it may be accomplished." In Star v. Mahan, 4 Dak 213, 30 NW 169, the syllabus reads: "Where the order for publication requires a copy of the summons and complaint to be deposited in the postoffice 'forthwith' the word means 'with all reasonable dispatch,' and it is a question for the court or judge to determine from all the facts and circumstances of the case whether there has been a sufficient compliance with the order." In Sluga v. Walker, 9 ND 108, 81 NW 282, we said considering cases in other courts that had construed the word "forthwith" in statutes requiring judgment to be entered forthwith upon the return of a verdict:

"The cases differ to some extent, however, as to what amounts to a compliance with a statute which requires the entry of judgment at

once, or forthwith, or immediately upon the return of a verdict. Wisconsin holds to a literal construction. Her statute requires the justice to render and enter judgment 'forthwith' upon receipt of the verdict. In Hull v. Mallory, 56 Wis 355, 14 NW 374, that court said: 'The word "forthwith" in this statute has been construed, in the most emphatic manner, to mean instanter, by this court, in several cases, and it is no longer an open question.' The Iowa statute also requires the judgment on a verdict to be entered 'forthwith.' The Supreme Court of that state, in Knox v. Nicoli, 97 Iowa 687, 66 NW 876, held that: 'The provisions of the statute that the judgment shall be entered "forthwith" must be reasonably construed. A judgment upon a verdict entered at 9 o'clock at night may properly be entered the next morning.' We think the construction of the Iowa court more nearly represents the purpose the legislature had in view in framing the statute in question, than the literal interpretation of the Wisconsin court. This, also, is the view of the Supreme Court of Minnesota. That court in Sorenson v. Swenson, 55 Minn 58, 56 NW 350, 43 Am St Rep 472, said: 'The word "forthwith" in such statute means within a reasonable time. We think the ends of justice will be better subserved by a liberal and equitable construction of the law and practice relating to justice courts, than by the adoption of a harsh and unbending rule of strict construction. We therefore hold that the word "forthwith" in the sections of our statutes quoted means, as there used, that the judgment must be rendered within a reasonable time after the return of the verdict. What constitutes such reasonable time will depend upon the circumstances surrounding each particular case. There should be no unreasonable delay.' This interpretation is supported by the weight of authority. Burchett v. Casady, 18 Iowa 344; Davis v. Simma, 14 Iowa 154, 18 Am Dec 462. To the same effect is the case of Huff v. Babbott, 14 Neb 150, 15 NW 230."

And in Gunn v. Lauder, 10 ND 389, 87 NW 999, we held: "The term 'forthwith' in statutes regulating official duties has generally been construed as meaning that the duty is to be performed promptly and with all convenient dispatch, but this requirement is always modified by the circumstances and the nature of the duty to be performed." Again in Brown v. Smith, 13 ND 580, 102 NW 171, we said, in a case

dealing with the right of redemption from a chattel mortgage sale: "We are clear that the phrase 'at the time of sale' taken in connection with the context and intent of the law, should be construed to convey the same meaning as the word 'forthwith' or 'immediately' would convey if used in the same connection. These terms are stronger than the expression 'within a reasonable time' and imply prompt, vigorous action without any delay. So construed the statute is complied with if the notice is served as soon as by reasonably prompt and vigorous exertion it may be accomplished."

Consistent with the foregoing cases and with the dictionary definitions above quoted, we think that in the statute now under consideration "forthwith" must be held to mean within a reasonable time after the buyer's bid is accepted. And that what constitutes such reasonable time will depend upon the circumstances attendant upon the transaction. This, in effect, was the meaning given to the word in Sheldon v. Steele, 114 Iowa 616, 87 NW 683, where the court, considering a case in many respects like the instant one, said: "The payment is to be made forthwith; that is, immediately; without delay; directly; as soon as the thing required may be done by reasonable exertion confined to that object." See, also in this connection, 28 CJ pp 927 et seq., where various meanings the courts have given to the term "forthwith" are set out.

Let us now consider the circumstances in the instant case. The plaintiff bid in the land on the 19th of November. Unable to get to the treasurer immediately on going to the latter's office, he went home and made no further move toward payment until December 3d, two weeks after the sale. In the meantime he complained about the price he had been required to bid on the land and said he had been unfairly treated. Thereafter, when on December 3d he did pay the required amount to the county treasurer, he did not advise either the auditor or the board of county commissioners that he had done so. Neither did he demand the written contract to which he was entitled if the sale was completed. Had he done so they doubtless would have executed the contract to him. On the contrary, by his words and conduct, he led them to believe he would not take the land at the price he had bid. So the auditor and the chairman of the board, unaware of his payment to the

treasurer and believing that plaintiff would not take the land, sold it to the defendants Dalos, who made the required payment and entered into the contract under which they now claim. This sale was not made until the 10th of December, a week after plaintiff had met with the county commissioners and haggled with them as to the purchase price of the land. It is true the plantiff says that on November 19th, the day of the sale, the auditor told him he could come in later and make his payment and get his contract. He gives no other reason for his delay. But the auditor denies this, and the circumstances support this denial. It is likewise true that the plaintiff says the reason he did not ask for the contract on December 3d, the date when he made the payment, was that he thought that this sale was like a sale of school lands and that the contract would be executed and sent to him later. But, so far as the record discloses, nothing was done by any of the county officers concerned with the sale that would tend to induce such a belief.

Viewing all of the circumstances shown we are forced to the conclusion that the plaintiff did not make or offer to make his payment within a reasonable time as required by the statute and that therefore there was no completed sale to him. Accordingly, when the auditor sold the land to the defendants Dalos, who made the required payment and the contract contemplated by the statute was executed and delivered, the transaction was within the statute and the sale as thus made must stand.

The judgment of the district court is therefore reversed and the case is remanded for further proceedings not inconsistent with this opinion.

MORRIS, Ch. J., and BURKE, CHRISTIANSON, and BURR, JJ., concur.