[File No. 7164]

ARTHUR REMMICH, Appellant, v. KATHERINE WAGNER et al., and Christ Wagner, Daniel Wagner, Philip Wagner, Christine Wagner and Reinhold Wagner, Respondents.

(41 NW2d 170)

Opinion filed February 3, 1950

*A. O. Ginnow,* for appellant.

*Charles Coventry* and *I. A. Mackoff,* for respondent.

GRIMSON, J.  Plaintiff brings this action to quiet title to the West One-half (W½) of the Southeast Quarter (SE¼) of Section Twenty-two (22), Township One Hundred Thirty-one (131) North of Range Seventy-one (71) West, in McIntosh County. He claims title through tax proceedings.  The complaint is in the statutory form.  The defendants answer claiming that the proceedings leading up to the tax sale on which plaintiff's title is based were not carried on in the manner provided by statute and further, that the sale of the land by the county to the plaintiff was not conducted according to law, and defendants ask that title be quieted in them.  To the answers of the defendants, plaintiff replied with a general denial.  The case was tried to the Court and judgment ordered in favor of the defendants. From that judgment this appeal is taken.

The record shows Katherine Wagner became the owner of the land involved by warranty deed, dated November 27, 1932.  That she died on or about October 1, 1938.  That the defendants, Christ Wagner, Daniel Wagner, Philip Wagner, Peter Wagner, Christine Wagner and Reinhold Wagner are her heirs.  That they are the owners of the property in the respective shares found by the district court unless their title has been divested by the tax proceedings or the sale of the land by the county to the plaintiff.

The evidence shows that the land in question was sold on

the 12th day of December 1933 for the 1932 taxes. The tax sale certificate was issued December 12, 1933. Notice of the expiration of the period of redemption was duly served. No redemption was made. Tax deed to McIntosh County was executed Oct. 1, 1940.

The law governing that tax sale was the initiated measure of November 8, 1932. 133 SL 500. That law provides that the county auditor shall at least twenty days before the second Tuesday of December of each year: "Prepare a list of all delinquent real estate taxes and shall post or cause to be posted one copy thereof in a conspicuous place in his office, one copy thereof in each of at least four conspicuous public places such as banks, public halls or postoffices in different parts of his county and shall retain a copy of such lists which shall at all times be on file and open to public inspection in his office. All such lists shall be signed and certified to by the county auditor. . . ."

Section 5 of the initiated law, SL 1933, 502, provides: "The lists herein referred to may be posted by the county auditor or his deputy or any employee of his office or by the sheriff or any deputy sheriff of the county, and proof of such posting shall be made and preserved by affidavit showing the fact, time and the places of posting such lists made by the party or parties posting the same and filed in the office of the county auditor before the date of the tax sale referred to, and proof of the publication of the notice of tax sale shall be made by affidavit filed with the county auditor before the date of sale to which it relates."

The objections to the proceedings leading up to the sale urged by the defendants are that there is no proof that the auditor prepared a list of the delinquent real estate taxes as required by this initiated law or that he posted a copy thereof in a conspicuous place in his office and in at least four conspicuous public places in the county, or that he retained a copy of such list on file in his office open to public inspection.

There is no direct proof in the evidence of the preparing of these lists for the 1932 tax sale and the only proof of the post-

ing of these lists is by way of five, unsworn statements made by others than the auditor himself certifying that the county auditor of McIntosh County did more than twenty days before the first Tuesday in December 1933 post in the Schumacher Store at Zeeland, North Dakota, First State Bank of Venturia, North Dakota, Hofer Hardware Building at Wishek, North Dakota, A. F. Ziegenhagel Hardware Building at Lehr, North Dakota, and in the Bank and Hardware Building at Danzig, North Dakota a copy of the delinquent tax sale list of McIntosh County for the year 1933. These statements were produced from the auditor's files.

Section 2 of the Initiated Act provides: "The county auditor shall give notice of the delinquent real estate tax sale in the official newspaper of the county. Such delinquent tax sale notice shall be published in such paper once a week for two successive weeks, the first publication of such notice to be made at least fourteen days prior to the date of such sale and such notice as published shall be signed by the county auditor. It shall contain the information that all lands on which taxes for the preceding year remain unpaid will be sold and shall state the time and place of such sale, which sale shall be held on the second Tuesday in December of each year. Such notice shall not contain the name of the owner of any lot or tract nor the description thereof, but it shall state that a list of all lands subject to such sale is on file and may be examined at the office of the county auditor of the county and that a copy of such list with names of the owners and descriptions of the lands or tracts involved and the total amount of the taxes and penalty due on each such tract (in which shall be included the sum of 15c as the cost and expense of advertising each such lot or tract.) has been posted in the office of the county auditor and in four or more public places in the county and shall give the name and location of each such place. The land and lots shall be offered for sale by the county auditor or his deputy in the order in which they appear in such lists."

An affidavit of the publication of such notice for the sale in question was produced in evidence. That notice and affidavit in

all respects conform with the law and no attack is made upon them.

It seems, therefore, that the only irregularity which appears in the evidence in connection with the tax sale in question arises from the failure of the proof of the preparing and posting of the tax sale lists to conform with the proof prescribed by the statute.

Paragraph 15, Sec 31–1103 NDRC 1943, establishes the presumption, satisfactory, if uncontradicted, "that official duty has been performed regularly." It was the official duty of the auditor to prepare and post the list of delinquent real estate taxes. The presumption is that he did so. There is no evidence to contradict this presumption. The unsworn statements and the affidavit of publication support that presumption. There is no pretense or proof that the lists were not actually prepared and posted as prescribed by statute. It is the fact and not the proof of making and posting the list that controls. Cruser & Baker v. Williams, 13 ND 287, 100 NW 721; Emmons County v. Thompson, 9 ND 598, 605, 84 NW 385.

Moreover, a mere irregularity in the proof of the making and posting of the tax lists would not be sufficient to set aside the tax sale unless that became an essential part of proving that the notice of the tax sale was not given. In other words, before the deed based on that tax sale could be set aside under the evidence of this case the proof must fail to show that the notice of the sale was given as required by law. It is the giving of the notice of tax sale that is jurisdictional to a valid tax sale. It is only for jurisdictional defects that this tax deed could be set aside at this time.

Sec 57–2429 NDRC 1943 provides that:

"Tax sale certificates, either original or subsequent, in all cases shall be prima facie evidence that all the requirements of law with respect to the sale have been complied with, and that the grantee therein is entitled to a deed therefor after the time of redemption has expired. No sale shall be set aside nor held invalid, unless the party objecting shall prove that:

1. The property upon which the tax was levied was not subject to taxation;

2. The taxes were paid prior to such sale;

3. Notice of such sale as required by law was not given; or

4. The piece or parcel of land was not offered at said sale to the bidder who would accept the lowest rate of interest on the amount for which the piece or parcel was to be sold.

In any such case, but in no other, the court may set aside the sale or reduce the amount of taxes upon the land sold, rendering judgment accordingly."

The effect of this section is that any irregularity excepting the four mentioned that is not attacked, before the tax sale, is cured and as to those four the prima facie evidence of the certificate must have been overcome before the sale can be set aside. Beggs v. Paine, 15 ND 436, 109 NW 322.

The validity of this tax deed, therefore, depends on whether or not the irregularity in the proof of making and posting of the tax lists amounts to a sufficient showing to overcome the prima facie evidence of the certificate that the notice of tax sale was given.

Prior to the initiated act of 1932, SL 1933, 500, our law required that the notice of tax sale contain a list of the lands to be sold, the name of the person to whom said property is assessed and the amount of taxes due. Section 1255 NDRC 1895, Section 2189 CL 1913; Section 2189, 1925 Supplement.

The cases cited by the defendants refer to statutes where that also was the situation and are, therefore, not determinative of the issue here involved.

The initiated law of 1932 heretofore quoted makes a change in this respect and specifically provides, "Such notice shall not contain the name of the owner of any lot or tract nor a description thereof."

A provision is made in Section 1 of the act for a separate list of delinquent taxes and provides that:

"Such lists shall contain the name of the owner of each lot or tract, as by the records appear, the description of such lot or tract, and the amount of tax and penalty due, in which amount as so given shall be included by the county auditor the sum of 15¢ as the cost and expense of advertising of such lot or tract."

There is no provision in the act that the lists shall state that a

sale will be had or the time and place thereof. It is Section 2 of the law that makes provision for and states the requirements of the notice of sale. That section also requires that reference be made in the notice to the lists and state where they are posted. In Section 3 the destruction of the lists is made a misdemeanor. Section 4 of the act provides: "That the removal or destruction of a list posted as herein provided shall not render any sale of lands therein described invalid." The purpose of the lists is to "Show liability of the particular piece of property to the payment of the particular sum assessed as a tax on it and the fact that the tax remains delinquent." 61 CJS 1137. The posting thereof is for the purpose of making easily available to the tax payer or other interested parties the tax status of the property and to induce payment. For the same reason reference to those lists is made in the published notice of sale. Even without those lists the tax payer will be presumed to know whether or not he has paid his taxes. The essential part of the notice of sale is that a sale will be had at a certain time and place. The tax lists and the reference thereto do not show that. The making and posting of such lists is a step in the sale procedure separate from the giving of the tax sale notice.

There are many steps in the tax proceedings such as the assessment of the property, the equalization of the assessments, the making and posting of these tax lists, the mailing by the county treasurer to each owner a notice that his land will be sold for the delinquent taxes unless paid prior to the tax sale, the giving of the notice of sale and the tax sale itself. All of these steps have to be taken in their order. An irregularity in any of them may be attacked before the tax sale. The tax sale certificate, however, is prima facie evidence that all have been taken and no tax sale shall be set aside unless the party attacking the sale shall prove at least one of four irregularities. Of these the only one affecting this case is that the notice of tax sale was not given. The failure of the proof of posting the lists to conform to the proof required by the statute is one of the irregularities that is cured when not attacked before the sale.

The tax deed to McIntosh County must, therefore, be held to be valid.

The defendants further contend that even if a deed to the county is valid the sale of the land by McIntosh County to the plaintiff was not conducted according to law and is void.

The defendants as former owners are permitted under Chapter 238 SL 1939 to redeem or repurchase the land as long as the tax title remains in the county. That is a sufficient interest in the land to entitle them to attack the sale by the county to the plaintiff.

The evidence shows that the tax deed to the premises was executed to McIntosh County on the 1st day of October 1940. On the 24th day of January 1941 a private sale was consummated between the county auditor of McIntosh County and Arthur Remmich, the plaintiff, for the purchase of the premises by the plaintiff for $163.32, payable in nine equal, annual installments of $13.61. Under that contract, on the completion of his payments, the plaintiff received the deed on which he bases his title.

The law governing that sale is found in Chapter 235 of the Session Laws of 1939. Sub-section 6 of Section 2 of that chapter provides that property acquired by tax deed: "shall under the direction of the board of county commissioners be sold at public or private sale, notice of which shall be given by posting at the front door of the court house thirty (30) days prior to the sale, a description of the parcels to be sold and if the assessed value of such property exceed $100.00 by publishing a notice of such sale in the official newspaper of the county giving a description of the parcels to be sold, such notice to be published once not less than ten (10) days prior to the date of sale. The description of all parcels of real estate to be sold at such sale shall be included in a single notice. Before publishing such notice the board of county commissioners shall appraise each lot of parcel of land and fix a tentative minimum sales price thereon." It will be noted that this applies to both public and private sales.

Sub-section 8 of Section 3 of the Act provides: ". . . Any parcels of real estate not disposed of at the November sale hereinbefore provided may be sold at any subsequent time by the

county auditor provided that no such sale shall be made at a price less than the minimum sales price heretofore fixed by the board of county commissioners prior to the November sale. . . ."

It is essential to a valid sale that there be substantial compliance with the statute. Every fact necessary to give the officer authority to make a sale should appear upon the record. M'Clung v. Ross, 5 Wheaton (U. S.) 116, 5 L ed 46; McCord v. Sullivan, 85 Minn 344, 88 NW 989.

In a discussion of Chapter 235 SL 1939 here involved, Judge Nuessle, speaking for this court says: "Of course the statute controls. Neither the board of county commissioners nor the auditor can deviate from its requirements and so doing make a valid contract." Dockter v. Sheridan County, 72 ND 607, 612, 10 NW2d 485, 488.

It is true that in the case of Horab v. Williams County, 73 ND 754, 19 NW2d 649, this court held that proceedings for the sale of property by the county after title had been obtained should not be viewed with the same strictness as original tax deed proceedings, but the inference left is that substantial compliance was necessary.

On the trial of the case the present county auditor testified that there was no proof in his office that the notice, required by the above quoted portion of the law, had been posted at the front door of the courthouse thirty days prior to the sale, or at all, nor of an affidavit of publication as required in Sub-section 6 above quoted when the property as here is valued at more than $100.00. The only evidence of an appraisal of this tract of land is the statement in what appears to be the memorandum of this particular sale, dated Jan. 24, 1941, signed by the plaintiff and the county auditor and county treasurer, setting forth the description of the land, the terms of this sale and other data concerning the property and including the following bare statement, "appraised value, $163.32." There is no evidence that such appraisal was made by the county commissioners before the public sale in 1940 or in prior years or that

a minimum price was fixed, or that this land was offered at public sale and "not disposed of."

The evidence in the case on this issue is very unsatisfactory. It is negative evidence. The method of proving the sale of tax acquired land is not prescribed by the statute. It should be possible to find some positive evidence as to whether or not the legal steps leading up to such a sale were or were not taken. Thus, for instance, search of the files of the official newspaper of that time should disclose whether or not the notice of sale required by the statute was published. The appellant was somewhat restricted in his attempt to trace evidence on this sale that might have been removed from the auditor's office. The state of the evidence is such that it is difficult to determine whether the presumption that officers do their duty is overcome by the rather indefinite and somewhat incomplete negative proof offered. The district court made no findings of fact on this issue. The appellant made no argument on it in the Supreme Court.

This Court in Landis v. Knight, 23 ND 450, 137 NW 477, determined that on appeals in equity cases triable de novo the court may, "if it deems such course necessary to the accomplishment of justice, order a new trial of the action" and the court sent the case back for a new trial because of the unsatisfactory and uncertain state of the testimony.

This principle has been followed in a number of cases since that time and a new trial ordered where it was deemed necessary for the accomplishment of justice. See Williams County State Bank v. Gallagher, 35 ND 24, 159 NW 80; Sutherland v. Noggle, 35 ND 538, 160 NW 1000; Drivdahl v. International Harvester Co. 43 ND 284, 174 NW 817; King v. Tallmadge, 45 ND 531, 178 NW 280; McLean v. McLean, 51 ND 309, 199 NW 872; The County of Hettinger v. Trousdale, 69 ND 505, 288 NW 25; Bredeson v. Warren, 73 ND 760, 19 NW2d. 652.

The court deems that because of the unsatisfactory condition of the evidence and in the interests of justice this case must be remanded to the district court for a new trial upon the issue raised on the deed by McIntosh County to the plaintiff.

At the beginning of the trial the plaintiff demanded that the

defendants make a deposit of all taxes delinquent and unpaid against the property as provided for in Sec. 57–4510, Supplement NDRC 143. The defendants had in their answer offered to pay into court such sum for taxes or otherwise as the court might deem just and proper. The court in its memorandum decision found that the amount so due was $250.92 and directed the defendants to make a deposit thereof in court which was done. The order for judgment directed that such deposit be paid to the plaintiff, Arthur Remmich, and judgment was entered, in accordance therewith. A warrant was issued to the plaintiff. That warrant has not been cashed but is still held by the plaintiff.

In the case of Belakjon v. Hilstad, 76 ND 298, 35 NW2d 637, 646, it is held that the deposit under that section was primarily for the benefit of the county which has to reimburse the purchaser the money received by it if the deed is held invalid. Disposition could not be made of such deposit, "in the absence of a release thereof by the county, without requiring the county to be made a party to the proceedings." In this case there is neither a release of the deposit nor is the county made a party. It follows that it was an error to direct payment to the plaintiff. The warrant should be returned or cancelled and the deposit held for disposition in accordance with the rule laid down in Belakjon v. Hilstad, supra, upon the final determination of this action.

The case is remanded to the district court for a new trial upon the issue of the deed by McIntosh County to the plaintiff.

NUESSLE, C. J., CHRISTIANSON, MORRIS and BURKE, JJ., concur.