**Percy O. FIBELSTAD, Petitioner and Appellant,**

v.

**GRANT COUNTY, a political subdivision of the State of North Dakota; and E.H. Schatz, as Auditor of Grant County, and individually, Respondents and Appellees,**

**and**

**Thomas Asbridge and Laura Asbridge, Defendants and Appellees,**

**and**

**The Farm Credit Bank of St. Paul, a body corporate, Intervenor and Appellee.**

**Civ. No. 900383.**

Supreme Court of North Dakota.

July 31, 1991.

**56**

Wheeler Wolf, Bismarck, for petitioner and appellant; argued by James J. Coles. Appearance by Percy O. Fibelstad.

Fleck, Mather & Strutz, Bismarck, for respondents and appellees Grant County and E.H. Schatz, as Auditor of Grant County; argued by Charles S. Miller.

Disselhorst Law Office, Bismarck, for defendants and appellees Thomas Asbridge and Laura Asbridge; argued by Thomas M. Disselhorst.

Tschider & Smith, Bismarck, for intervenor and appellee Farm Credit Bank of St. Paul; argued by Sean O. Smith.

MESCHKE, Justice.

Percy O. Fibelstad appeals from a summary judgment denying his petition for a writ of mandamus to compel the Grant County auditor to issue tax sale certificates to him for a 6,330 acre ranch. The denial of the petition was based on the trial court's ruling that Grant County had not acquired title to the land because the 1984 tax sale was invalid. We remand for modification of the judgment.

In 1983 Laura and Thomas Asbridge mortgaged their ranch to Federal Land Bank of St. Paul, the predecessor to Farm Credit Bank of St. Paul. The Asbridges failed to pay the 1983 real estate taxes assessed against the ranch. On December 11, 1984, the County offered the land for sale for delinquent 1983 taxes. Prior to the sale, the county auditor did not publish the notice of tax sale directed by NDCC 57–24–07. Because no one bid on the land at the tax sale, the county treasurer bid in the amount of the delinquent taxes. NDCC 57–24–14. In these circumstances, pursuant to NDCC 57–24–23, the County is deemed to have obtained a tax sale certificate.

The Bank began foreclosure against the Asbridges in 1985. *See Federal Land Bank of St. Paul v. Asbridge,* 414 N.W.2d 596 (N.D.1987). On February 5, 1986, the Bank paid the County the amount due for the 1983 taxes, but in the meantime real estate taxes for later years had become delinquent. In these circumstances, the County is deemed to have received subsequent tax sale certificates for the amount of delinquent taxes accruing during those years, even though no additional tax sale is held. NDCC 57–24–25. So, in spite of the partial payment by the Bank in 1986, the County continued to hold tax sale certificates based on the 1984 sale.

In May 1989 the county auditor notified the Asbridges and the Bank of expiration of the period of redemption for the 1984 tax sale. The notices stated that the property would vest in the County unless redemption was made from the remaining tax sale certificates on or before October 1, 1989.

On September 18, 1989, Fibelstad went to the county treasurer's office and paid $11,531.46, the amount of the delinquency for 1984 taxes on the ranch, and was issued tax receipts. On September 29, 1989, Fibelstad paid the county treasurer $30,884.03, the amount of the delinquencies for tax years 1985, 1986, 1987, and the first half of 1988, and was again issued tax receipts. The Bank did not redeem.

On October 16, 1989, Fibelstad paid the county treasurer $3,392.60 for the remain-

der of the 1988 taxes on the property. At that time Fibelstad demanded that the auditor assign to him the tax sale certificates for the Asbridge ranch. The auditor refused. According to the treasurer, when Fibelstad made the September 1989 payments, he "indicated that he wanted to pay Tom Asbridge's taxes" and "never indicated he wished or intended to acquire the tax sale certificate[s]." Prior to October 1, 1989, the treasurer "advised" a Bank representative "that the 1984 taxes on the Asbridges' property had been paid and the property thus redeemed." According to the Bank, it relied on this conversation in not redeeming before October 1.

Fibelstad sued the County seeking a writ of mandamus to compel the county auditor to assign the tax sale certificates to him based on his payment of the taxes and on the failure of any interested party to redeem. The trial court converted the mandamus action into a declaratory judgment action to quiet title to the ranch. The Asbridges were joined as defendants and the Bank was allowed to intervene as a defendant.

The trial court granted the Bank's motion for summary judgment. Apparently assuming for purposes of its decision that Fibelstad had in fact purchased the tax sale certificates in September 1989, the court ruled that the county auditor's failure to publish notice of the December 1984 tax sale invalidated that sale and all subsequent tax proceedings affecting the ranch, and that the County, therefore, had no valid title to convey to Fibelstad. The trial court denied Fibelstad's petition for writ of mandamus and he appealed.

■ Summary judgment is proper when, after viewing the evidence in a light most favorable to the opposing party and giving that party the benefit of all favorable inferences, there is no genuine dispute as to either the material facts or the inferences to be drawn from undisputed facts. *Heller v. Production Credit Association of Minot,* 462 N.W.2d 125, 127 (N.D.1990). Even if factual disputes exist, summary judgment is appropriate when resolution of those factual disputes would not change the result. *Matter of Estate of Hansen,* 458 N.W.2d 264, 270 (N.D.1990). We conclude that resolution of the factual disputes in this case would not change the result.

## I. STANDING

■ Fibelstad argues that the Bank has no standing to intervene in this case because it failed to prove that the Asbridges' mortgage had been legally transferred by the Federal Land Bank to the Farm Credit Bank. Fibelstad relies on NDCC 47–10–01, which says that "[a]n estate in real property . . . can be transferred only by operation of law or by an instrument in writing, subscribed by the party disposing of the same or by his agent thereunto authorized by writing." Fibelstad claims that he "searched the real estate records as to all 41 parcels of the property which is the subject of this action" and "discovered no assignment or other conveyance of record transferring the mortgage interest" of the Federal Land Bank to the Farm Credit Bank. We reject Fibelstad's argument.

Section 410(a) of the Agricultural Credit Act of 1987, Pub.L. 100–233, codified at 12 U.S.C. § 2011, et seq., required federal land banks and federal intermediate credit banks of each Farm Credit System district to merge into a Farm Credit Bank no later than July 6, 1988. This record shows that on May 17, 1988, Federal Land Bank of St. Paul and Federal Intermediate Credit Bank of St. Paul entered into an Agreement and Plan of Consolidation that was subsequently approved by the Farm Credit Administration. The pertinent clause of that agreement, Article I, Section 1.1(b), provides:

> On the Effective Date, the separate existence of the Constituent Entities shall cease, and the F[arm] C[redit] B[ank] shall be established and shall . . . succeed to and possess all the properties, rights, privileges, powers, franchises, immunities and purposes, and shall succeed and be subject to all the debts, liabilities, obligations, restrictions and duties, of the Constituent Entities, all without further act or deed.

Thus, "by operation of law" Farm Credit Bank is the successor in interest to the Federal Land Bank. This record also shows that a certified copy of the Charter of Farm Credit Bank has been recorded with the Grant County register of deeds, as well as with all other counties in the state. Farm Credit Bank has standing in this case.

## II. VALIDITY OF TAX SALE

The statutory scheme governing the sale of real property for collection of delinquent taxes is comprehensive. There are provisions for notices of an impending tax sale to the owner, other interested parties, and the public through different, but interrelated, methods. The county treasurer is directed, during the first half of November of each year, to mail each owner of land subject to sale a notice giving the legal description and stating that the property will be sold unless the delinquent taxes, including penalties and interest, are paid prior to the sale on the second Tuesday in December. NDCC 57–24–01. The county auditor is also directed to prepare and to post "in a conspicuous place in his office" a list of all delinquent real estate taxes at least 20 days before the scheduled tax sale and "extra copies of the list of delinquent real estate taxes may be placed in banks and such other places as designated by the county commissioners." NDCC 57–24–02. The list of delinquent real estate taxes must contain the names of the owners of each tract, the description of each tract, and the total amount of taxes, penalties, interest, and other costs and expenses due on each tract. NDCC 57–24–03. In addition, NDCC 57–24–07 directs:

*County auditor to give notice of tax sale by publication.* The county auditor shall give notice of the delinquent real estate tax sale by publishing in the official newspaper of the county a notice, over his signature, published once each week for two successive weeks, the first publication to be made at least fourteen days prior to such sale. Each notice shall contain the information that all lands upon which taxes for the preceding year remain unpaid will be sold, and shall state the time and place of sale. The notice shall not contain the name of the owner of any lot or tract, nor the description thereof, but it shall state that a list of all lands subject to such sale is on file and may be examined at the office of the county auditor, and that a copy of such list with names of the owners and descriptions of the lands or tracts involved, and the total amount of taxes, penalties, interest, and cost of advertising, has been posted in the office of the county auditor and in four or more public places in the county, giving the name and location of such places of posting.

Proof of publication of the notice of tax sale should be made through an affidavit of publication that should be filed with the auditor before the date of the sale. NDCC 57–24–08. It is undisputed that the Grant County auditor did not publish this notice.

After the sale, the purchaser is entitled to a tax sale certificate describing the land purchased, stating the sum paid, and stating the time when the purchaser will be entitled to a tax deed. NDCC 57–24–19. In cases where the county is the purchaser of the property, a tax sale certificate is deemed to have been issued to the county. NDCC 57–24–23. The tax sale certificate is given a significant curative effect. This effect is described in NDCC 57–24–29:

*Certificate as evidence—Grounds for avoiding sale.* Tax sale certificates, either original or subsequent, in all cases shall be prima facie evidence that all the requirements of law with respect to the sale have been complied with, and that the grantee therein is entitled to a deed therefor after the time of redemption has expired. No sale shall be set aside nor held invalid, unless the party objecting to the same shall prove that:

1. The property upon which the tax was levied was not subject to taxation;

2. The taxes were paid prior to such sale;

3. *Notice of such sale as required by law was not given;* or

4. The piece or parcel of land was not offered at said sale to the bidder who would accept the lowest rate of inter-

est on the amount for which the piece or parcel was to be sold.

In any such case, but in no other, the court may set aside the sale or reduce the amount of taxes upon the land sold, rendering judgment accordingly.

[Emphasis added]. Failure to give a notice of sale required by law is not cured by issuance of a tax sale certificate.

■ Additional curative effect is given to the failure of an owner or mortgagee to redeem the land. NDCC 57–28–08 directs:

*Effect of failure to redeem.* The failure of the owner or any mortgagee, or other lienholder, to redeem such lands before the period of redemption expires, shall operate:

1. To pass all of the right, title, and interest of the owner, mortgagee, or lienholder in and to said premises, to the county by operation of law subject only to the lien for installments of special assessments certified or to be certified to the county auditor or which may become due subsequent to the time of the service of the notice of expiration of the period of redemption.

2. To foreclose all rights and equities of redemption.

3. *To waive all errors, irregularities, or omissions which do not affect the substantial rights of the parties, in tax deed proceedings, except jurisdictional defects.*

[Emphasis added]. Jurisdictional defects are not waived by a failure to redeem.

In this case, the county auditor did not publish notice of sale as directed by NDCC 57–24–07. Giving Fibelstad the benefit of all reasonable inferences as it was required to do in this summary judgment proceeding, the trial court necessarily assumed for purposes of its decision that Fibelstad had purchased the tax sale certificates rather than redeemed on behalf of the Asbridges. The trial court also recognized that the Bank "had actual notice that the county had undertaken to sell the land in 1984 for the overdue 1983 taxes" because the Bank had, in fact, partially redeemed by paying the delinquent 1983 taxes. Still, the trial court ruled that the tax sale was invalid

because, pursuant to NDCC 57–24–29(3), "[n]otice of such sale as required by law was not given." In effect, the court concluded that this ground for avoiding a tax sale, preserved by NDCC 57–24–29(3), was also a "jurisdictional defect" preserved by NDCC 57–28–08(3), not waived by the tax certificates or by the failure of the owner and mortgagee to redeem.

Fibelstad argues that the trial court erred in its interpretation of these curative statutes. As the tax sale process advances, Fibelstad argues, interested parties are faced with increasingly fewer options for challenging the proceedings and contesting a tax title. He posits that, after the expiration of the period of redemption, the specific grounds set forth in NDCC 57–24–29 are no longer available to challenge the tax title and that challengers are limited by NDCC 57–28–08(3) to showing the existence of errors, irregularities, or omissions that affect substantial rights and to establishing the existence of jurisdictional defects in the proceedings. Because the Bank had actual notice of the sale, Fibelstad argues that no substantial rights were affected by the failure to publish notice. Besides, he equates the term "jurisdictional defect" with only constitutional violations. Because the Legislature could constitutionally abolish notice of tax sales by publication, Fibelstad would have us conclude that there was no jurisdictional defect in this case.

The term "jurisdictional defect" is not defined by statute. "There is no ready formula for determining whether a defect in a tax sale proceeding or in the proceeding leading up thereto is jurisdictional or not...." 72 Am.Jur.2d *State and Local Taxation* § 960, at p. 249 (1974). It appears that the concept of a "jurisdictional defect" can differ depending on the context of the challenge to the tax sale proceedings.

In *Nind v. Myers*, 15 N.D. 400, 109 N.W. 335 (1906), the plaintiff challenged the Legislature's authority to enact a curative statute barring all actions to question the validity of a tax sale not brought within three years from the date of sale. The plaintiff

argued in part that the legislation was invalid because it did not require adverse possession to set the limitation period in motion. Although the court upheld the statute, it also said:

It is evident that, notwithstanding the sweeping language of the statute, there might be defects shown which could not be cured by a statute of limitations which does not require adverse possession. As to such defects, this section would be of no effect. No such defect, however, is shown in this case.... The jurisdictional defects, which cannot be thus barred without adverse possession, consist of the nonperformance of some of those things which are inherently or constitutionally necessary to a tax sale. The nonperformance of some act which is not inherently or constitutionally necessary to the right to sell, but which the Legislature in its discretion may or may not require, is not a "jurisdictional defect," as that term is used in construing and applying statutes of this character....

*Nind,* 109 N.W. at 339–340. For some purposes, a jurisdictional defect may be defined as nonperformance of "things ... inherently or constitutionally necessary to a tax title."

However, the *Nind* court also recognized the Legislature's power to designate as jurisdictional certain requirements that are not constitutionally dictated. The court, noting the "distinction between incurable jurisdictional defects and those which are jurisdictional only to the extent that the Legislature has made them so," said that the determination of a "jurisdictional defect" presents " 'a very different inquiry' " when addressing the Legislature's power to cure the nonperformance of a required act: " 'A defect may be in one sense jurisdictional relatively to the authority of the assessors acting under an existing law, and yet not so as it respects the power of the Legislature to pass a statute curing the defect.' " *Nind,* 109 N.W. at 340 [quoting *Ensign v. Barse,* 107 N.Y. 329, 346, 15 N.E. 401, 402 (1888) (On Petition for Rehearing) ]. *Cf. Anderson v. Roberts,* 71 N.D. 345, 1 N.W.2d 338, 341 (1941) ["Unless the defects complained of are *specified*

*in the statute* or are beyond the power of the Legislature to remedy they may not be asserted after certificates of sale have been issued." (Emphasis added) ]. Although Fibelstad's constitutional theory of jurisdictional defects may control a challenge to the Legislature's authority to cure certain defects, we do not believe that theory controls all interpretation of the tax sale statutes.

The question here is not whether the Legislature has the authority to enact a statute barring challenges to certain defects. Rather, this question is whether the defect of failing to publish notice of sale, specified as a defect in NDCC 57–24–29(3), was or was not intended by the Legislature to remain a jurisdictional defect specified in NDCC 57–28–08(3) after the period of redemption has expired.

This court's decision in *Remmich v. Wagner,* 77 N.D. 120, 41 N.W.2d 170 (1950), gives some guidance in answering this question. In *Remmich* the plaintiff was issued a tax deed after the defendants failed to redeem. The defendants challenged the validity of the tax sale based on an irregularity in the proof of the making and posting of the tax lists. Apparently, the lists were actually prepared and posted as prescribed by statute. After noting that "[i]t is the fact and not the proof of making and posting the lists that controls," the court, construing the predecessor statute to NDCC 57–24–29, reasoned:

[A] mere irregularity in the proof of the making and posting of the tax lists would not be sufficient to set aside the tax sale unless that became an essential part of proving that the notice of the tax sale was not given. In other words, before the deed based on that tax sale could be set aside under the evidence of this case *the proof must fail to show that the notice of the sale was given as required by law. It is the giving of the notice of tax sale that is jurisdictional to a valid tax sale. It is only for jurisdictional defects that this tax deed could be set aside at this time.*

\*　　\*　　\*　　\*　　\*　　\*

The effect of [Section 57–2429, NDRC 1943] is that any irregularity excepting the four mentioned that is not attacked, before the tax sale, is cured and as to those four the prima facie evidence of the certificate must have been overcome before the sale can be set aside. *Beggs v. Paine*, 15 N.D. 436, 109 N.W. 322. *Remmich*, 41 N.W.2d at 173 [Emphasis added]. The *Remmich* opinion thus instructs that the failure to give a required notice of a tax sale is a jurisdictional defect that will invalidate a tax sale after the expiration of the period of redemption.

The court's analysis in *Remmich* comports with prior decisions of this court holding that statutes directing notice by publication prior to a tax sale are mandatory and jurisdictional, and that the failure to strictly follow the publication directions voids the tax sale. *See State v. Magedanz*, 64 N.D. 55, 250 N.W. 336, 338 (1933); *Hackney v. Elliott*, 23 N.D. 373, 137 N.W. 433, 446–447 (1912); *Griffin v. Denison Land Co.*, 18 N.D. 246, 119 N.W. 1041, 1042 (1908); *Lee v. Crawford*, 10 N.D. 482, 88 N.W. 97, 99 (1901); *Dever v. Cornwell*, 10 N.D. 123, 86 N.W. 227, 230–231 (1901); *Sweigle v. Gates*, 9 N.D. 538, 84 N.W. 481, 483 (1900). This view is also held by other courts. 85 C.J.S. *Taxation* § 792 (1954). We conclude that failure to publish a notice required by law before a tax sale is a jurisdictional defect within the intended meaning of NDCC 57–28–08.

The statute specifies that a tax sale may be set aside if the notice of such sale as "required by law" was not given. NDCC 57–24–29. The phrase "required by law," when used in a statute, is ordinarily construed to mean required by statutory law. For examples, *see City of Mountlake Terrace v. Stone*, 6 Wash.App. 161, 492 P.2d 226, 230 (1971), and cases cited therein. The statutory direction to publish notice of sale serves a useful purpose in this comprehensive statutory scheme for tax sales. The publication of notice is an additional means of notifying the owner as well as others with an interest in the property "that a sale will be had at a certain time and place," which is the "essential part of the notice of sale." *Remmich*, 41 N.W.2d

at 174. Additionally, the publication of notice is the primary means of notifying potential buyers in the general public, thereby increasing the likelihood that the lands will be sold and lost tax revenue recovered. *See* 72 Am.Jur.2d *State and Local Taxation* § 928 (1974). These factors reinforce our conclusion that failure to publish this required notice is a jurisdictional defect.

The Bank's actual notice of the tax sale does not preclude it from challenging the sale on the ground of failure to comply with the statutory notice requirements. *See Sailer v. Mercer County*, 75 N.D. 123, 26 N.W.2d 137 (1947). Nor are we persuaded by Fibelstad's argument that the Bank waived its right to challenge the 1984 tax sale because it partially redeemed the property from that sale in 1986. The 1984 tax sale for delinquent 1983 taxes set the statutory process in motion and affected the procedural rights and obligations of the parties when later tax delinquencies occurred. For example, because the County had purchased the property at the 1984 tax sale, it was not required to again offer the property for sale for subsequently assessed and delinquent taxes. NDCC 57–24–15. The Bank's partial payment in 1986 could not change the ongoing tax sale process. We conclude that the Bank's redemption from one of a series of tax delinquencies did not waive its right to challenge the validity of those delinquencies. *Werner v. Werner*, 74 N.D. 565, 23 N.W.2d 757 (1946). Since this tax sale had a jurisdictional defect, the Bank could challenge its validity.

Tax sale proceedings "are for the enforcement of taxes, and not for the purpose of depriving someone of his or her property...." Annot., *Right of interested party receiving due notice of tax sale or of right to redeem to assert failure or insufficiency of notice to other interested party*, 45 A.L.R.4th 447, 451 (1986). For that reason, tax sale proceedings are viewed as drastic in nature, there must be strict compliance with mandatory and jurisdictional requirements of the relevant statutes, and those statutes will be strictly construed in favor

of the owners of the property. *Brink v. Curless*, 209 N.W.2d 758, 765 (N.D.1973), overruled on other grounds in *City of Bismarck v. Muhlhauser*, 234 N.W.2d 1, 5 (N.D.1975). In this case there was a total failure to publish notice of the tax sale.

▇▇▇ We conclude that the failure to publish notice of the tax sale was a jurisdictional defect that rendered the tax sale invalid. The County had no valid title to convey to Fibelstad.

## III. DEPOSIT OF TAXES

Fibelstad asserts that the trial court erred in granting relief to the Bank in the absence of a deposit into court by the Bank of all delinquent and unpaid taxes on the ranch. We agree.

NDCC 57–45–10 directs:

> *Tender of taxes.* Whenever any action is brought to test the validity of any deed issued and delivered by the county to the purchaser of lands acquired through tax deed proceedings, the court shall not proceed with the trial of such action until the party assailing the validity of such deed, within the time required by the court, shall deposit with the clerk thereof for the benefit of the county should the deed be held invalid, the amount of all delinquent and unpaid taxes on said property, including penalty and interest, plus any taxes paid thereon by the purchaser from the county. Should said action be determined adversely to the purchaser from the county it shall repay to him any moneys received by the county on said purchase.

▇▇▇ We reject the Bank's contention that this statute does not apply because no tax deeds had been issued to Fibelstad. Although this action was originally commenced as a mandamus action, it was changed into a declaratory judgment action to quiet title to the ranch when the Bank intervened. For purposes of the decision on the Bank's summary judgment motion, the trial court necessarily assumed that Fibelstad purchased the tax sale certificates rather than redeemed on behalf of the Asbridges. As a result, Fibelstad was theoretically entitled to an assignment of the tax sale certificates. NDCC 57–24–19 and 57–24–21. After the period of redemption expired, Fibelstad was theoretically entitled to tax deeds. NDCC 57–27–05. This case became, for all intents and purposes, an action testing the validity of tax deeds.

▇▇▇ We also reject the Bank's argument that Fibelstad cannot require the deposit of taxes because the statute specifies that the deposit is "for the benefit of the county." The deposit demanded by NDCC 57–45–10 is primarily for the benefit of the county because the statute requires the county to repay the purchaser in the event the tax title fails. *Belakjon v. Hilstad*, 76 N.D. 298, 35 N.W.2d 637, 646 (1949). The deposit condition is intended to prevent a party, who successfully invalidates a tax title, from escaping payment of the taxes on the property. *Belakjon v. Hilstad*, 78 N.D. 194, 48 N.W.2d 747, 752 (1951). It is clear that a county cannot waive compliance with the statute by failing to demand the deposit. *Strom v. Giske*, 68 N.W.2d 838, 847–848 (N.D.1954); *Belakjon*, 48 N.W.2d at 752; *Remmich*, 41 N.W.2d at 175–176. To prevail in its challenge to the validity of the tax sale, the Bank must deposit all delinquent taxes, penalty, and interest with the court.

Although Fibelstad argues that the Bank "must be dismissed from this action entirely" for its failure to make the deposit, that is not the remedy for noncompliance with the deposit requirement. *Eikevik v. Lee*, 73 N.D. 197, 13 N.W.2d 94, 98 (1944); *Messer v. Henlein*, 72 N.D. 63, 4 N.W.2d 587, 590 (1942); *Halvorson v. Haugen*, 64 N.D. 476, 253 N.W. 751 (1934). Rather, we have interpreted the statute as a codification for tax title purposes of the equitable principle that one who seeks equity must do equity. *Messer*, 4 N.W.2d at 590. In other words, the failure to make the deposit postpones the granting of any affirmative relief to the challenger of the tax title. *Eikevik*, 13 N.W.2d at 98. In the words of the statute, "the court shall not proceed...." The Bank cannot proceed with the summary judgment until the deposit is made.

Accordingly, we modify and remand to the trial court to determine the amount the Bank must deposit with the clerk of court under NDCC 57–45–10. *See Strom*, 68 N.W.2d at 847–848. Until that deposit is made, the court cannot grant summary judgment to the Bank. With the modification and deposit, the Bank would be entitled to summary judgment.

ERICKSTAD, C.J., LEVINE and VANDE WALLE, JJ., and VERNON R. PEDERSON, Surrogate Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of GIERKE, J., disqualified.