FIRST TRUST JOINT STOCK LAND BANK of Chicago, Appellant, v. JACOB G. LEHMAN et al., Appellees.

No. 44141.

DECEMBER 30, 1938.

Shull & Stilwill, and M. P. Lawless, for appellant.

Hoorneman & Dull, for appellees.

RICHARDS, J.—On April 15, 1937, plaintiff commenced this suit in equity in the Plymouth district court, seeking a judgment against defendants Lehman upon a promissory note, and the foreclosure of a real estate mortgage securing payment of the note. Defendants Lehman made application that the cause be continued until March 1, 1939, pursuant to the provisions of Senate File 15, now chapter 80, Acts of the 47th General Assembly. This act, after reciting the existence of and necessities arising from an emergency, provided that, in foreclosure actions such as was this one, upon an application in good faith being made by the owner of the real estate, the court shall order the cause continued to March 1, 1939, upon certain conditions, unless good cause is shown to the contrary. Plaintiff filed a resistance. Therein, as good cause why the application should not be granted, it was alleged that plaintiff is an agency or instrumentality of the United States government, that the mortgage it holds is likewise such an instrumentality, and that, as to plaintiff and its mortgage, the operation of Senate File 15 is unconstitutional, null and void. Nothing else is found in the resistance excepting an allegation, in support of the alleged status of agency and instrumentality, that plaintiff was organized and operates under the Federal Farm Loan Act of July 17, 1916, 39 Stat. 360. The court ordered that the application be granted and therefrom plaintiff has appealed.

Though the arguments are largely directed to the proposition advanced by plaintiff that it.is a Federal agency or instrumentality, that question need not be discussed. For though we affirmed the soundness of the proposition, it would not of necessity follow that there was error in the order granting the continuance. There would still remain the vital question whether Senate File 15 frustrates or interferes with the proper functioning of this alleged Federal instrumentality in carrying out the governmental powers for which it was created and intended by Congress. We find that this latter question is determinative of the problem before us. Accordingly, for the purposes of this opinion and despite what is said in Higdon v. Joint Stock Land Bank, 223 Iowa 57, 272 N. W. 93, it will be assumed arguendo

that plaintiff and its mortgage are Federal instrumentalities.

The courts have generally assumed that it is in the discretion of Congress to determine in what respects and to what extent its instrumentalities, for their proper functioning, shall be immune from legislation of state origin. In some instances Congress has expressly defined, in other cases expressly waived, certain immunities. When in the act creating the instrumentality express provisions respecting an alleged immunity are not found, the courts give consideration to the provisions that are contained in such act. In Baltimore National Bank v. State Commissioner of Maryland, 1936, 297 U. S. 209, 56 S. Ct. 417, 80 L. Ed. 586, the court viewed the act in the light of other Federal legislation, and concluded that an implication arose that the alleged immunity did not exist.

To a large extent infringement of state legislation upon the constitutional powers of Congress is discussed in cases that involve taxation attempted by the states. In respect to this subject matter, taxation, the more recent pronouncements of the United States Supreme Court emphasize regard for substance and direct effects rather than for merely theoretical conceptions of interference with functions of government. See Guy T. Helvering, Comm. of Int. Rev. v. Mountain Prod. Corp., No. 600, 303 U. S. 376, 58 S. Ct. 623, 82 L. Ed. 907, filed March 7, 1938. In the dissenting opinion that was filed it was remarked (page 628), "McCulloch v. Maryland (4 Wheat. 316, 4 L. Ed. 579), held that impliedly the Federal Constitution forbade imposition by Maryland of *any tax* upon the operations of the Bank of the United States within that state," and that "the opinion brings forward no real reason for so sweeping a change of construction of the constitution." (Italics supplied.) There were involved in this case Federal taxes on income derived from operating oil leases on lands owned by a state. It was held the effect of the tax was remote and indirect.

In Home Building and Loan Assn. v. Blaisdell, 290 U. S. 398, 54 S. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481, the court held against the contentions that a certain Minnesota moratorium statute, Laws 1933, Ch. 339, was violative of the contract clause and of the due process clause of the Federal constitution, U. S. C. A. Const. Art. 1, §10; Amend. 14, and held against the claim that the act denied the equal protection of the law. In the course of the opinion it is said (page 238), "Not only is

the constitutional provision (the contract clause) qualified by the measure of control which the State retains over remedial processes, but the state also continues to possess authority to safeguard the vital interests of its people.'' This further appears: ''Undoubtedly, whatever is reserved of state power must be consistent with the fair intent of the constitutional limitation of that power. The reserved power cannot be construed so as to destroy the limitation, nor is the limitation to be construed to destroy the reserved power in its essential aspects. They must be construed in harmony with each other.''

The question before us is not whether Senate File 15 infringes upon the contract or due process clauses, but whether it is unconstitutional because it obstructs or interferes with the governmental purposes for which Congress created joint stock land banks, assuming that they are its instrumentalities.

■ Consistently with the more recent pronouncements of the Federal courts we will consider the question with substance and direct effects in mind, rather than following merely theoretical conceptions of interference. The Minnesota enactment considered in the Blaisdell case, and Senate File 15, in their essentials are of like purpose and content, and in view of the findings in the Blaisdell case, we are of the opinion that Senate File 15 was addressed to a proper and legitimate end; that the conditions upon which the period was extended were reasonable; that the integrity of plaintiff's mortgage indebtedness was not impaired; that interest continued to run; that the owner must pay the rental value of the real estate during the extended time as ascertained by judicial proceedings; that the chief concern of plaintiff land bank is protection of its investment security; that the relief afforded by the statute has regard to the interests of the mortgagee as well as to the interests of the mortgagor; that the legislation seeks to prevent the impending ruin of both by a considerable measure of relief. These findings lead to the conclusion that there was no substantial or direct interference, by reason of Senate File 15, with the accomplishment of the purposes for which Congress created land banks such as is plaintiff. A like conclusion was reached with respect to a Michigan moratorium act, in the case of Union Joint Stock Land Bank of Detroit v. Kissane, 277 Mich. 668, 270 N. W. 178.

■ We think the reasonableness of our conclusion becomes more apparent as we take into consideration that ''Immunity

of corporate government agencies from suit and judicial process, and their incidents, is less readily implied than immunity from taxation." Federal Land Bank of St. Louis v. Priddy, 295 U. S. 229, 55 S. Ct. 705, 708, 79 L. Ed. 1408. It is also to be noted that sections 676 and 813, Title 12, the Code of Laws of the United States of America, in force December 6, 1926, 12 U. S. C. A. §§676, 813, confer on joint stock land banks the power "to make contracts." The same sections confer the power "To sue and be sued, complain, interplead, and defend, in any court of law or equity, as fully as natural persons." It is in large measure true of land banks as it is of national banks, that they "are subject to the laws of the state, and are governed in their daily course of business far more by the laws of the state than of the nation. All their contracts are governed and construed by state laws. Their acquisition and transfer of property, their right to collect their debts, * * * are all based on state law." McClellan v. Chipman, 164 U. S. 347, 17 S. Ct. 85, 87, 41 L. Ed. 461.

█ Congress undoubtedly contemplated that land banks would be litigants in state courts. But this was not accompanied by any Congressional provision to the end that land banks or their mortgages be immunized from any of the indiscriminating laws of the states respecting procedure or remedies, or occupy as litigants a preferential status. Congress did however take precautions with respect to the safeguards against loss to mortgagees generally, in case of default, afforded by the states. For section 971, Title 12, the Code of Laws, supra, 12 U. S. C. A. §971, imposes the duty upon the Federal Farm Loan Commissioner to make examination of the laws of every state and to inform the Federal Farm Loan Board whether in the judgment of the commissioner the laws of each state relating to conveying and recording land titles, the foreclosure of mortgages, and relating to other material matters are such as to assure the holders of mortgages adequate safeguard against loss in the event of defaults. The order of the trial court is affirmed.—Affirmed.

SAGER, C. J., and OLIVER, DONEGAN, STIGER, HAMILTON, and KINTZINGER, JJ., concur.