The **FEDERAL LAND BANK OF ST. PAUL, a corporation, Plaintiff and Appellee,**

v.

Maynard T. **LILLEHAUGEN and Delores Lillehaugen, husband and wife, And all other persons unknown claiming any estate or interest in or lien or encumbrance on the property described in the Complaint, Defendants and Appellants.**

Civ. No. 11254.

Supreme Court of North Dakota.

April 16, 1987.

Theodore M. Camrud, of Degnan, McElroy, Lamb, Camrud, Maddock & Olson, Grand Forks, for plaintiff and appellee.

Gary D. Kanwischer (argued) of Sortland Law Office, Fargo, and John Remington

Graham, of Milloy & Graham, Brainerd, Minn., for defendants and appellants.

VANDE WALLE, Justice.

Maynard T. Lillehaugen and Delores Lillehaugen appealed from a district court judgment which granted the Federal Land Bank of St. Paul (FLB) foreclosure of its mortgage on land owned by the Lillehaugens. We affirm in part, reverse in part, and remand for further proceedings.

On June 18, 1980, FLB loaned the Lillehaugens $36,000. The Lillehaugens executed a promissory note secured by a mortgage on approximately 150 acres of land. The Lillehaugens defaulted on the note and FLB brought this foreclosure action during June 1984. A default judgment was entered against the Lillehaugens, but in *Federal Land Bank of St. Paul v. Lillehaugen*, 370 N.W.2d 517 (N.D.1985), we reversed the district court's denial of the Lillehaugens' motion to vacate that judgment. After our remand, the Lillehaugens answered and counterclaimed, and a trial was held on February 19, 1986.

At trial the Lillehaugens presented evidence in support of two defenses. Maynard Lillehaugen and Dr. Roger Johnson, an agriculture economist at North Dakota State University, testified in support of the confiscatory-price defense. See §§ 28–29–04, 28–29–05, and 28–29–06, N.D.C.C. Lillehaugen testified about the income he was receiving for farm commodities, as well as the costs incurred in producing those commodities, and Dr. Johnson testified to the effect that the cost of producing spring wheat, flax, and sunflowers is greater than the prices received for those products. Lillehaugen also testified in support of the asserted defense that FLB breached a fiduciary duty owed to the Lillehaugens by failing to disclose the actual cost of credit associated with their loan.

In its oral ruling from the bench at the close of the evidence, the trial court rejected both defenses and granted FLB foreclosure of the mortgage. In its written

findings of fact, conclusions of law, and order for judgment the trial court found that, with regard to the non-disclosure defense, "[t]he Defendants at all pertinent times knew the credit terms, [and] made no factual showing that there was any undisclosed terms, including the payments that were to be made, ..." The basis for the trial court's rejection of the confiscatory-price defense is less clear. In its oral ruling the trial court held that the confiscatory-price defense statutes are pre-empted by the Farm Credit Act of 1971, 12 U.S.C. §§ 2001, *et seq.* Although expressing "doubts as to whether [the Lillehaugens] have established confiscatory price as a defense in this case," the trial court stated that "I make that comment but not as a specific ruling on whether or not that defense was or was not established." The trial court's written findings and conclusions, however, do not mention the Federal pre-emption ruling, but contain a finding that "[t]here has not been convincing evidence" to establish the confiscatory-price defense.

■■■■ Generally, a trial court's written findings of fact prevail when a discrepancy exists between those findings and the court's prior memorandum opinion or oral ruling. See *Schmidt v. Plains Elec., Inc.*, 281 N.W.2d 794 (N.D.1979). Although there are variations between the trial court's oral ruling and its written findings and conclusions in this case, we do not believe that they evidence a "discrepancy" in the sense that a recognition of both would create a truly inconsistent trial court result. Compare *Moore v. North Dakota Workmen's Compensation Bureau*, 374 N.W.2d 71, 72 n. 1 (N.D.1985) [judgment which denied attorney fees controlled over order for judgment which allowed the fees]. Accordingly, we interpret the primary basis for the trial court's decision in this case to be that the confiscatory-price defense statutes are pre-empted by Federal law.[1] We consider the trial court's finding that the Lillehaugens failed to establish the

---

1. The trial court did not rule on the constitutional validity of the confiscatory-price defense statutes.

confiscatory-price defense to be an alternative basis for its decision.

## I

The Lillehaugens assert that the trial court erred in ruling that the confiscatory-price defense statutes are pre-empted by the Farm Credit Act of 1971. We agree.

The Supremacy Clause of Article VI of the United States Constitution provides Congress with the power to pre-empt State law. Federal land banks were created by Congress and are "federally chartered instrumentalities of the United States." 12 U.S.C. § 2011; see also, *Federal Land Bank of Saint Paul v. Gefroh*, 390 N.W.2d 46 (N.D.1986); *Federal Land Bank of St. Paul v. De Rochford*, 69 N.D. 382, 287 N.W. 522 (1939). As such, Congress has the authority to determine the extent to which State law is pre-empted with respect to Federal land bank activities. See *First National Bank v. Missouri*, 263 U.S. 640, 44 S.Ct. 213, 68 L.Ed. 486 (1924).

The United States Supreme Court has not adopted a singular approach to pre-emption issues, but has employed various formulations in identifying different instances of pre-emption:

> "Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, *Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977), when there is outright or actual conflict between federal and state law, *e.g., Free v. Bland*, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962), where compliance with both federal and state law is in effect physically impossible, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), where there is implicit in federal law a barrier to state regulation, *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, *Rice v. Sante Fe Elevator Corp.*, 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947), or

where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941). Pre-emption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may preempt state regulation. *Fidelity Federal Savings & Loan Assn. v. De la Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982); *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984)."

*Louisiana Public Service Comm'n v. F.C.C.*, — U.S. —, —, 106 S.Ct. 1890, 1898–1899, 90 L.Ed.2d 369 (1986). See generally *Application of Otter Tail Power Co.*, 354 N.W.2d 701 (N.D.1984); *Northwestern Fed. Sav., Etc. v. Ternes*, 315 N.W.2d 296 (N.D.1982); *Northern States Power Co. v. Hagen*, 314 N.W.2d 32 (N.D. 1981).

The Supreme Court has emphasized, however, that "the first and fundamental inquiry in any pre-emption analysis is whether Congress intended to displace state law, and where a congressional statute does not expressly declare that state law is to be preempted, and where there is no actual conflict between what federal and state law prescribe, we have required that there be evidence of a congressional intent to pre-empt the specific field covered by the state law." *Wardair Canada, Inc. v. Florida Dept. of Revenue*, — U.S. —, —, 106 S.Ct. 2369, 2372, 91 L.Ed.2d 1 (1986). Because of the generally interstitial nature of Federal law, a pre-emption of State law by Federal statute or regulation is not favored, and consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace State law. *Application of Otter Tail Power Co., supra;* see also, *Maryland v. Louisiana*, 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981).

Our pre-emption analysis begins with a brief review of the confiscatory-

price defense statutes.[2] These statutes were adopted by our Legislature in 1933 as part of a comprehensive response to issues of farm foreclosure, farm debt, farm debtor relief, and low farm prices during the agricultural and economic crisis of the 1930s. See *Production Credit Ass'n of Minot v. Lund,* 389 N.W.2d 585 (N.D.1986); *Lang v. Bank of North Dakota,* 377 N.W.2d 575 (N.D.1985); Vogel, *The Law of Hard Times: Debtor and Farmer Relief Actions of the 1933 North Dakota Legislative Session,* 60 N.D.L.Rev. 488 (1984). The confiscatory-price defense statutes provide the courts with special equitable powers to protect debtors when the prices of agricultural products are below the cost of their production or when the debtor would lose his equity in a home to foreclosure or execution, and further authorize the courts to stay foreclosure proceedings on public policy grounds. See Vogel, *supra.* While these statutes authorize a court, in its discretion, to delay foreclosure proceedings, they do not constitute an absolute defense against foreclosure thereby relieving the mortgagor of his obligations under his contract. In applying the defense, "the court cannot force the mortgagee to accept less than the amount due under the mortgage or declare that the mortgagor is freed from making any further payments." *Folmer v. State,* 346 N.W.2d 731, 735 (N.D.1984). The obvious legislative purpose of the con-

fiscatory-price defense is to provide a form of protection for the farmer-landowner during times of economic hardship. See *Heidt v. State,* 372 N.W.2d 857 (N.D.1985).

The current provisions of the Farm Credit Act of 1971, 12 U.S.C. §§ 2001, *et seq.,* represent the culmination of 70 years of one form of Congressional response to the credit needs of rural America. See Harl, 11 *Agricultural Law* § 100.01[2] (1986). Originally enacted as the Federal Farm Loan Act of 1916 [Ch. 245, 39 Stat. 360 (1916)] in an effort to alleviate the growing problem of high interest rates, short repayment periods, and aggressive foreclosure policies in existence at the time, the Act created a cooperative system of 12 Federal land banks, along with Federal land bank associations authorized to act as their local lending agents. See Harl, *supra,* § 100.-03(1), at p. 100–23 n. 4. The Act essentially established a system where the member-borrowers and their elected representatives participate in decision-making for the banks and institutions serving them, and where, by subscribing to a stock interest in the system, the member-borrowers become, in effect, the "owners" of the system. Harl, *supra,* § 100.03, at p. 100–22. Throughout the history of the Farm Credit System, its declared purpose has remained substantively unchanged:

> "§ 2001. *Congressional declaration of policy and objectives*

2. Sections 28–29–04, 28–29–05, and 28–29–06, N.D.C.C., provide:

> "*28–29–04. Power of courts when prices are confiscatory.*— Until the price of farm products produced in this state shall rise to a point to equal at least the cost of production, in comparison with the price of other commodities in general, entering into the business of agriculture, the supreme court of this state and all district and county courts in this state shall have power, when it is deemed for the best interests of litigants, to extend the time for serving and filing all papers requisite and necessary for the final determination of any cause. Any such court, in like manner, may stay the entry of judgment or the issuance of execution thereon, or may defer the signing of any order for judgment, or may defer terms of court, whenever in the judgment of the court the strictly legal procedure in any cause will confiscate or tend to confiscate the property of any litigant by forcing the sale of agricultural products upon a ruinous market." ·

> "*28–29–05. Courts may delay orders in foreclosures.*— Whenever any foreclosure proceeding is pending in any court in this state and the amount of the debt is less than the value of the property involved, and when any order for judgment will have the force and effect of depriving a defendant of his home and confiscating his property, the court may construe further proceedings to be unconscionable, and may delay the signing of such order to such time as it shall deem it advisable and just to enter the same."

> "*28–29–06. Public policy.*— Any court mentioned in section 28–29–04 may take judicial notice of the situation of producers and laborers when prices of farm products are confiscatory, and upon the ground of public policy may do all things necessary to be done lawfully to carry out the provisions of sections 28–29–04 and 28–29–05."

"(a) It is declared to be the policy of the Congress, recognizing that a prosperous, productive agriculture is essential to a free nation and recognizing the growing need for credit in rural areas, that the farmer-owned cooperative Farm Credit System be designed to accomplish the objective of improving the income and well-being of American farmers and ranchers by furnishing sound, adequate, and constructive credit and closely related services to them, their cooperatives, and to selected farm-related businesses necessary for efficient farm operations.

"(b) It is the objective of this chapter to continue to encourage farmer-and rancher-borrowers participation in the management, control, and ownership of a permanent system of credit for agriculture which will be responsive to the credit needs of all types of agricultural producers having a basis for credit, and to modernize and improve the authorizations and means for furnishing such credit and credit for housing in rural areas made available through the institutions constituting the Farm Credit System as herein provided." 12 U.S.C. § 2001.

▮ Having carefully reviewed the provisions of the Farm Credit Act of 1971, we do not discern any Congressional intent, either express or implied, to pre-empt State laws governing mortgage foreclosures or defenses thereto. Rather, in view of the Act's current provisions, as well as court interpretations of its predecessor statutes, it is clear that Congress intended State law to govern these matters.

Perhaps the most telling strike against FLB's pre-emption argument is found in 12 U.S.C. § 2259:

*"§ 2259. State legislation*

"Whenever it is determined by the Farm Credit Administration, or by judicial decision, that a State law is applicable to the obligations and securities authorized to be held by the institutions of the System under this chapter, which law would provide insufficient protection or inadequate safeguards against loss in the event of default, the Farm Credit Admin-

istration may declare such obligations or securities to be ineligible as collateral for the issuance of new notes, bonds, debentures, and other obligations under this chapter."

This statute is an adaptation of similar provisions found in the Federal Farm Loan Act of 1916 [see Ch. 245, § 30, 39 Stat. 360, 382 (1916) ] and the Farm Credit Act of 1933 [see 12 U.S.C. §§ 971 and 972] and was intended to extend their applicability. See H.Rep. No. 92–593, 92nd Cong., 1st Sess., *reprinted in* 1971 U.S.Code Cong. & Ad.News 2091, 2118. The United States Supreme Court has relied on the earlier versions of 12 U.S.C. § 2259 in determining that the Act "does not prescribe proceedings for foreclosure but indicates that state laws are to govern." *Federal Land Bank v. Warner,* 292 U.S. 53, 55, 54 S.Ct. 571, 78 L.Ed. 1120 (1934). It is also significant that during the 1930s Federal pre-emption arguments made on behalf of institutions governed by the Federal Farm Loan Act of 1916 concerning State moratorium laws and other similar statutes were uniformly rejected by State courts. See *First-Trust Joint Stock Land Bank v. Lehman,* 225 Iowa 1309, 283 N.W. 96 (1938); *Union Joint Stock Land Bank of Detroit v. Baker,* 56 Ohio.App. 520, 11 N.E.2d 269 (1937); *Union Joint Stock Land Bank of Detroit v. Kissane,* 277 Mich. 668, 270 N.W. 178 (1936); *Rose v. Union Joint Stock Land Bank of Detroit,* 278 Mich. 188, 270 N.W. 180 (1936). By expressly allowing the Farm Credit Administration to ban a particular State from the benefits of the Farm Credit System if the laws of the State provide insufficient protection or inadequate safeguards against loss in the event of default, Congress has clearly evidenced its intention that State law govern Federal land banks in mortgage foreclosure proceedings.

This conclusion is further supported by Congress's explicit pre-emption of other areas of State law regarding taxation [see 12 U.S.C. §§ 2055 and 2079; *Federal Land Bank of St. Paul v. Bismarck Lumber Co.,* 314 U.S. 95, 62 S.Ct. 1, 86 L.Ed. 65 (1941) ] and interest rate limitations [see 12

U.S.C. §§ 2015 and 2205; *Federal Land Bank of St. Louis v. Wilson,* 719 F.2d 1367 (8th Cir.1983)].

FLB contends that the interpretation and application of the confiscatory-price defense statutes create a genuine obstacle to the stated purposes and objectives of the Farm Credit Act because they "substantially diminish" FLB's rights to foreclose its mortgages. While we agree that the authority to foreclose its mortgages is one of the lending functions created for Federal land banks [see 12 U.S.C. §§ 2012(5) and 2033(5); *Bismarck Lumber Co., supra*], the confiscatory-price defense does not authorize a court to relieve the mortgagor of his obligations under the loan transaction, but merely allows the court, in its discretion and when deemed to be in the best interests of the litigants, to delay the foreclosure proceedings [see *Folmer, supra*]. Rather than constituting an obstacle to the accomplishment of Congressional purposes and objectives, the confiscatory-price defense statutes are consistent with the policies adopted by the Farm Credit Administration in furtherance of Congress's goal of fostering agricultural development. The Farm Credit Administration's loan-servicing requirements specifically call for a policy providing a "means of forbearance" to

foreclosure under certain circumstances. See 12 U.S.C. § 2199(b) and 12 C.F.R. § 614.4510(d)(1);[3] *Federal Land Bank of St. Paul v. Halverson,* 392 N.W.2d 77 (N.D.1986).

■ FLB further asserts, and the trial court reasoned, that application of the confiscatory-price defense statutes to institutions of the Farm Credit System would result in a complete frustration of the purposes and objectives of the Act because, under 12 U.S.C. § 2259, the Farm Credit Administration would likely make North Dakota mortgages ineligible as collateral for new loans. However, we cannot predict whether the Farm Credit Administration would find that the confiscatory-price defense statutes "provide insufficient protection or inadequate safeguards against loss in the event of default, ..." 12 U.S.C. § 2259. It is enough to note that §§ 28–29–04, 28–29–05, and 28–29–06, N.D.C.C., which do not expressly exempt Federal land banks from their coverage,[4] have been in existence in this State for more than 50 years. Apparently, these statutes have not caused a cessation of FLB lending activity in the past. Compare *First State Bank of Cooperstown v. Ihringer,* 217 N.W.2d 857, 859 (N.D.1974) ["It is common knowledge that (the 1951 amendments to the anti-defi-

---

**3.** 12 U.S.C. § 2199(b) provides:

"(b) In accordance with regulations of the Farm Credit Administration, System institutions shall develop a policy governing forbearance. Each System institution shall provide borrowers with a copy of the institution's policy regarding forbearance at such time or times as the Farm Credit Administration shall prescribe in such regulations."

12 C.F.R. § 614.4510(d)(1) provides:

"(d) In the development of the bank and association loan servicing policies and procedures, the following criteria shall be included:

"(1) *Term loans.* The objective shall be to provide borrowers with prompt and efficient service with respect to justifiable actions in such areas as personal liability, partial release of security, insurance requirements or adjustments, loan division or transfers, conditional payments, extensions, deferments or reamortizations. Procedures shall provide for adequate inspections, reanalysis, reappraisal, controls on payment of insurance and taxes (and ⸱ for payment when necessary), and prompt exercise of legal options to preserve the lender's collateral position or guard

against loss. The policy shall provide a means of forbearance for cases when the borrower is cooperative, making an honest effort to meet the conditions of the loan contract, and is capable of working out of the debt burden. Loan servicing policies for rural home loans shall recognize the inherent differences between agricultural and rural home lending."

**4.** We are not persuaded by FLB's argument that the Legislature did not intend that the confiscatory-price defense statutes apply to Federal land banks because other Depression Era enactments relating to mortgage foreclosures specifically exempted Federal land banks from their coverage. See 1939 N.D.Sess.Laws Ch. 165, § 10; 1937 N.D.Sess.Laws Ch. 161, § 11; 1935 N.D.Sess. Laws Ch. 242, § 11. We believe that the Legislature's failure to expressly exempt Federal land banks from the confiscatory-price defense statutes [see 1933 N.D.Sess.Laws Ch. 99], while expressly exempting the Federal land banks in the other enactments, clearly manifests an intention that the confiscatory-price defense statutes apply to Federal land banks.

ciency judgment law) were made because the Federal Land Bank, one of the principal lenders in the State, was refusing to make loans unless deficiency judgments were permitted. The response of the Legislature was to allow deficiency judgments under very limited circumstances, . . ."]; see also, Report of the North Dakota Legislative Research Committee, 32nd Legislative Assembly, at p. 37 (1951). FLB's argument is best made to the Legislature.

We conclude that the confiscatory-price defense provisions of Chapter 28–29, N.D. C.C., are not pre-empted by the Farm Credit Act of 1971.

## II

The Lillehaugens assert that the trial court erred in determining that they failed to establish the elements necessary to invoke the confiscatory-price defense. The only written finding of fact relating to the confiscatory-price defense states:

> "There has not been convincing evidence that in this case the cost of production (as contrasted to the Defendants' expenditures) exceeds the price of farm products, nor have the Defendants presented convincing evidence that the best interests of the litigants would be served by extending further the time for the final determination of this action. Therefore relief prayed for under paragraph 6. of the Defendants' amended Answer [confiscatory-price defense] is denied."

■ Conclusory, general findings do not constitute compliance with Rule 52(a), N.D.R.Civ.P. *Eszlinger v. Wetzel*, 326 N.W.2d 215 (N.D.1982). More specifically, findings of fact which merely state that a party "has failed in its burden of proof" are inadequate under Rule 52(a). *Park View Manor v. Housing Authority, Etc.*, 287 N.W.2d 83, 86 (N.D.1979); see also, *Struchynski v. Decker*, 194 N.W.2d 741 (N.D.1972). Rather, the trial court must specifically state the subordinate facts upon which its ultimate factual conclusions rest. *Radspinner v. Charlesworth*, 346 N.W.2d 727 (N.D.1984). The trial court's finding in this case that "[t]here has not

been convincing evidence" to establish the confiscatory-price defense is similar to the conclusory findings rejected in *Park View Manor* and *Struchynski*. It does not provide us with any understanding of the underlying factual basis for the trial court's ultimate conclusion. Although this court may examine a trial court's memorandum opinion or oral ruling for the purpose of determining the facts found by the court if the written findings of fact are grossly inadequate [see *Schmidt v. Plains Elec., Inc.*, 281 N.W.2d 794 (N.D.1979)], resort to the oral ruling is futile in this case because it indicates that the trial court intended to not rule on whether the confiscatory-price defense had been factually established.

We therefore remand this case to the trial court to make appropriate findings of fact and conclusions of law on the Lillehaugens' claim of the confiscatory-price defense.

## III

■ The Lillehaugens assert that the trial court erred in refusing to apply equitable principles to bar FLB's foreclosure action because it breached a fiduciary duty owed to the Lillehaugens by failing to disclose the "true cost of credit associated with their loan." We disagree.

The Lillehaugens' assertion is premised on the requirement under the Farm Credit Act that borrowers purchase stock in a Federal land bank association in order to obtain an FLB loan. See 12 U.S.C. §§ 2013, 2016, and 2034. They essentially contend that this requirement constitutes a hidden cost of credit and that the failure of FLB to so inform them prevents it from foreclosing the mortgage because it comes to court with "unclean hands."

Assuming arguendo that a fiduciary relationship may exist under some circumstances between farmers and those who implement the provisions of the Farm Credit Act [see *Creech v. Federal Land Bank of Wichita*, 647 F.Supp. 1097 (D.Colo.1986)], the Lillehaugens' assertion in this case provides them with no ground for relief. The Lillehaugens have been members of the Federal land bank association since 1968

and were aware of the stock-purchase requirement. Upon the Lillehaugens' default, their stock was canceled and applied to reduce the outstanding balance of the loan. See 12 U.S.C. § 2034(a). The Lillehaugens have not demonstrated any harm or prejudice resulting from the required stock purchase, or from FLB's failure to inform the Lillehaugens that the stock purchase was a "part of the real cost of the loan." Cf. *Federal Land Bank of Saint Paul v. Anderson,* 401 N.W.2d 709 (N.D. 1987) [rejecting claims of "stock fraud" and violations of provisions of the Truth-in-Lending Act, 15 U.S.C. §§ 1601, *et seq.,* governing disclosure and right of rescission]. We conclude that the trial court did not err in dismissing the Lillehaugens' non-disclosure defense.

In accordance with this opinion, we affirm the trial court's dismissal of the Lillehaugens' non-disclosure defense. The judgment is otherwise reversed and the case is remanded to the trial court for the preparation of appropriate findings of fact and conclusions of law with respect to the Lillehaugens' assertion of the confiscatory-price defense. The court may conduct any further proceedings it deems necessary to fully resolve the issue. No costs are allowed on the appeal.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.