The NORTHERN TRUST COMPANY,
Plaintiff and Appellee,

v.

BUCKEYE PETROLEUM COMPANY, INC., Buckeye Petroleum Drilling Program 1981, Canyon State Gas & Oil 1979–3, Richard Kramer, Maria Kramer, Marie-Louise Scholle-Kramer, Total Petroleum Company, Martin Oil Company, Koch Oil Company, Murphy Oil USA, Inc., and Phillips Oil Company, Defendants,

Redstone Energy Corporation,
Defendant and Appellant.

Civ. No. 11069.

Supreme Court of North Dakota.

June 19, 1986.

Bjella, Neff, Rathert, Wahl & Eiken, Williston, for plaintiff and appellee; argued by Fred C. Rathert.

Rolfstad, Winkjer, McKennett & Stenehjem, Williston, for defendant and appellant; argued by Donna M. Murphy.

MESCHKE, Justice.

Redstone Energy Corporation (Redstone) appeals from a partial summary judgment permitting Northern Trust Company (Northern) to enforce an assignment of production and proceeds of production of oil and gas from the Johnson 34–1 Well in Williams County, North Dakota. We affirm.

Beginning in September 1979, Northern extended loans totaling $2,732,541.77 to Buckeye Petroleum Company, Inc. (Buckeye) pursuant to a line of credit established between the parties. As security for the loans Northern and Buckeye executed an open-end mortgage, security agreement, financing statement and assignment [open-end mortgage], dated September 30, 1980, granting Northern a security interest in certain Williams County oil and gas well interests of Buckeye.[1] The open-end mortgage included a provision for the assignment of production and proceeds of production from the mortgaged property to Northern upon written demand by Northern. The open-end mortgage also included a provision for Northern to waive in writing its priority in the mortgaged property. The open-end mortgage was recorded in Williams County on October 30, 1980, and filed as a security agreement and financing statement on October 31, 1980.

The Johnson 34–1 Well was not part of the mortgaged property. However, Northern and Buckeye executed a first amended and supplemental open-end mortgage, security agreement, financing statement and assignment (first amended open-end mortgage) on February 22, 1982, specifically granting Northern a security interest in Buckeye's interest in the Johnson 34–1 Well and incorporating by reference all the terms and conditions of the open-end mortgage. The first amended open-end mortgage was recorded in Williams County on March 15, 1982.

On December 14, 1981, Buckeye owned a 37.5% working interest and a 28.685% revenue interest in the Johnson 34–1 Well. Between December 14, 1981, and July 29, 1982, Buckeye transferred part of its working interest in the Johnson 34–1 Well to Richard, Maria, and Marie-Louise Kramer (the Kramers) who are all citizens of West Germany. On November 21, 1983, Buckeye assigned an undivided 20.33338% working interest in the Johnson 34–1 Well to Redstone. That assignment was recorded on December 2, 1983, and thereafter amended and corrected by an assignment recorded on January 5, 1984, wherein Buckeye assigned the working interest to Red-

---

**1.** The mortgaged property also included oil and gas interests in Oklahoma, Ohio, and Colorado, which are not involved in this litigation.

stone solely for the purpose of collateral to secure an unpaid obligation to Redstone.

Buckeye defaulted on its obligation to Northern and is presently involved in Chapter 11 bankruptcy proceedings. On February 12, 1985, Northern commenced this action to prevent and restrain the distribution of the production and proceeds of production from the Liliam 34–1, Liliam 2–1, and Johnson 34–1 Wells and to enforce the assignment of production provisions of the open-end mortgage and the first amended open-end mortgage.[2] The bankruptcy court adhered to the automatic stay provisions of the bankruptcy act as to the Liliam Wells, but lifted the stay so that this action could proceed as to the Johnson 34–1 Well.

Northern moved for summary judgment seeking the production and proceeds of production from the Johnson 34–1 Well. The Kramers entered a special appearance alleging that service of the summons and complaint was defective and objecting to the court's jurisdiction. The district court agreed that it did not have personal jurisdiction over the Kramers because the summons and complaint was not served according to the procedure for service upon citizens of West Germany.

Based upon undisputed facts, the district court determined that Northern had a valid mortgage lien on the production and proceeds of production from the Johnson 34–1 Well after the recording of the first amended open-end mortgage on March 15, 1982, and that the defendants who took assignments from Buckeye after that date, took them with constructive notice of Northern's right to obtain the production and proceeds of production attributable to Buckeye's interest in the well. The district court also determined that on November 30, 1983, Northern made a written demand to Buckeye to enforce the provision for the assignment of production from the Johnson 34–1 Well. The district court, granting partial summary judgment to Northern, concluded that Northern was entitled to the production and proceeds of production after November 30, 1983, from the Johnson 34–1 Well equivalent to a 28.3333334% working interest and a 21.675% net revenue interest. The district court found that there was no reason for delay pursuant to Rule 54(b), N.D.R.Civ.P., and partial summary judgment was entered. Redstone appealed.

Redstone contends that the district court erred in granting summary judgment because there were genuine issues of material fact as to whether Northern waived its priority in the mortgaged property. Northern counters that Redstone did not present evidence by affidavit or otherwise in opposition to the motion for summary judgment to establish that Northern had waived in writing its priority over Redstone.

In *Gowin v. Hazen Memorial Hosp. Ass'n*, 349 N.W.2d 4, 8 (N.D.1984), we summarized our approach to summary judgment:

> "The purpose of summary judgment is to promote the expeditious disposition of a legal conflict on its merits, without a trial, if no dispute as to material facts or inferences to be drawn therefrom exists or whenever only a question of law is

---

**2.** The action was commenced against Buckeye, Redstone, Buckeye Petroleum Drilling Program 1981, Canyon State Gas & Oil 1979–3, Richard Kramer, Maria Kramer, Marie-Louise Scholle-Kramer, Total Petroleum Company, Martin Oil Company, Koch Oil Company, Murphy Oil USA, Inc., Phillips Oil Company, and Basin Oil Company. Northern's complaint alleged that Redstone, Buckeye Petroleum Drilling Program 1981, Canyon State Gas & Oil 1979–3, the Kramers, and Total Petroleum Company had an interest in the Johnson 34–1 Well, and that the remaining defendants had an interest in the Liliam Wells.

Buckeye Petroleum Drilling Program 1981 and Canyon State Gas & Oil 1979–3 are both limited partnerships with Buckeye as a general partner. Northern's complaint alleged that Buckeye Petroleum Drilling Program 1981 claimed an interest in the Johnson 34–1 Well by assignment from Buckeye recorded December 2, 1983, and that Canyon State Gas & Oil 1979–3 claimed an interest in the Johnson 34–1 Well by assignments from Buckeye recorded on December 2, 1983, and January 3, 1984. Total Petroleum Company is the operator of the Johnson 34–1 Well and Phillips Oil Company is the purchaser of gas produced from the Johnson 34–1 Well.

involved. *Pioneer Credit Co. v. Medalen*, 326 N.W.2d 717, 718 (N.D.1982); *Breene v. Plaza Tower Ass'n*, 310 N.W.2d 730, 733 (N.D.1981).

"Summary judgment is inappropriate if either party is not entitled to judgment as a matter of law or if reasonable differences of opinion exist as to the inferences to be drawn from undisputed facts. *Johnson v. Haugland*, 303 N.W.2d 533, 537 (N.D.1981). However, even if factual disputes exist between the parties, summary judgment is appropriate if the law is such that the resolution of the factual dispute will not change the result. *Spier v. Power Concrete, Inc.*, 304 N.W.2d 68, 72 (N.D.1981). Such facts in essence are not material facts. *Spier, supra.*

"The court may consider the pleadings, depositions, admissions, affidavits, and interrogatories to determine whether or not summary judgment is appropriate. *Albers v. NoDak Racing Club, Inc.*, 256 N.W.2d 355, 358 (N.D.1977). On appeal from a summary judgment, the evidence is viewed in the light most favorable to the party against whom the summary judgment was granted. *Erickson v. Farmers Union Mut. Ins. Co.*, 311 N.W.2d 579, 580 (N.D.1981)."

In *First Nat. Bank of Hettinger v. Clark*, 332 N.W.2d 264, 267 (N.D.1983), we outlined the obligation of a party opposing a motion for summary judgment:

"A party resisting a motion for summary judgment has the responsibility of presenting competent admissible evidence by affidavit or other comparable means, NDRCivP 56(e); *Spier v. Power Concrete, Inc.*, 304 N.W.2d 68 (N.D. 1981); and, if appropriate, drawing the court's attention to evidence in the record by setting out the page and line in depositions or other comparable document containing testimony or evidence raising a material factual issue, or from which the court may draw an inference creating a material factual issue.

"In summary judgment proceedings the trial court has no legal obligation, judicial duty, or responsibility to search the record for evidence opposing the motion for summary judgment. This principle and legal concept applies equally well, or more so, to appellate proceedings involving an appeal from the granting of a summary judgment for the further reason that the appellate court, except for jurisdictional matters and taking judicial notice, generally considers only those issues raised in the trial court."

■ Redstone did not submit affidavits or other evidence to establish that Northern had waived in writing its priority in the mortgaged property as to Redstone. Neither did Redstone submit affidavits or other documents stating that it could not present facts, through affidavits, to justify its position or why it would need additional time to present such facts. Rule 56(f), N.D.R.Civ.P. Redstone submitted a brief in opposition to the motion for summary judgment in which it presented the legal argument that Northern's remedy was to foreclose the mortgage. Nothing in that argument suggested a waiver by Northern of its priority over Redstone. We conclude that Redstone has not adequately raised any factual basis to establish waiver or to preclude partial summary judgment in Northern's favor on that issue.[3]

■ Redstone also contends that Northern's sole remedy was to foreclose its mortgage pursuant to this Court's recent decisions in *Mischel v. Austin*, 374 N.W.2d 599 (N.D.1985), and *H & F Hogs v. Huwe*, 368 N.W.2d 553 (N.D.1985). Northern contends that those cases are inapplicable because they apply only to mortgages involving real property whereas Northern's mortgage also involves oil and gas extracted from the ground which is personal property. We agree with Northern that the cases relied upon by Redstone are distinguishable from the instant case because they involved mortgages on real property only. In those cases, we held that Sections 32–19–04, 32–19–06, and 32–19–07, N.D.C.C.,

---

3. We express no opinion as to the claims involving the Kramers.

require the mortgagee to foreclose on the mortgage and prohibit an action by the mortgagee directly on the debt. *See also Loraas v. Connolly*, 131 N.W.2d 581 (N.D. 1964).

In *State Bank of Towner v. Hansen*, 302 N.W.2d 760, 764 (N.D.1981), a case involving real and personal property, we said:

> "We construe this subsection [Section 41–09–47(4), N.D.C.C. (U.C.C. § 9–501(4)] as providing a secured creditor, whose security encompasses both real and personal property, with the option of proceeding against all collateral in a single action providing that he does so in accordance with his rights and remedies accorded by the real property laws. However, we do not construe this subsection to prohibit a secured creditor from commencing separate actions to proceed independently against the personal property collateral and the real property collateral. If the secured creditor chooses to proceed in separate actions the default provisions of the Uniform Commercial Code apply with regard to the personal property collateral." [4]

*See also Bank of Killdeer v. Fettig*, 129 N.W.2d 365 (N.D.1964).

■ Unless excluded by Section 41–09–04, N.D.C.C. [U.C.C. § 9–104], Article 9 of the U.C.C. applies to "any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods...." Section 41–09–02(1)(a), N.D.C.C. [U.C.C. § 9–102(1)(a)]. Section 41–09–04, N.D.C.C. [U.C.C. § 9–104], does not exclude extracted oil and gas from the coverage of Article 9 of the U.C.C. Goods include all things which are movable at the time the security interest attaches, but does not include "minerals or the like (including oil and gas)

before extraction." Section 41–09–05(1)(h), N.D.C.C. [U.C.C. § 9–105(1)(h)].[5] Those provisions are in harmony with the general principle that oil and gas in place is regarded as real property, [*see Petroleum Exchange v. Poynter*, 64 N.W.2d 718 (N.D. 1954)], but, when extracted, becomes personal property. *Ingram v. Ingram*, 214 Kan. 415, 521 P.2d 254 (1974); *Clark, The Law of Secured Transactions Under the Uniform Commercial Code*, ¶ 13.2, 13.3 (1980). *See also Sabine Production Co. v. Frost National Bank of San Antonio*, 596 S.W.2d 271 (Tex.Civ.App.1980) [uranium].

■ We conclude that the production or proceeds of production of extracted oil and gas is personal property subject to the provisions of Article 9 of the U.C.C. Pursuant to Section 41–09–47(1), N.D.C.C. [U.C.C. § 9–501(1)], when a debtor is in default, a secured party has the rights and remedies provided in Article 9 and those provided in the security agreement. We conclude that, pursuant to the terms of the security agreement, Northern was entitled to enforce its assignment of production and proceeds of production from the Johnson 34–1 Well and that Northern did not have to foreclose on its mortgage in order to enforce that right.

■ Redstone also contends that it was entitled to written notice from Northern of its intent to enforce the assignment. We disagree. The open-end mortgage specifically provided that, unless Northern received written notice to the contrary, notice of the enforcement of any of its provisions was sufficient if sent to the mortgagor's address, that of Buckeye. Nothing in the record indicates that Redstone notified Northern that it was a successor in interest of Buckeye. Consequently, we conclude that Northern's obligation was satisfied

---

**4.** Section 41–09–47(4), N.D.C.C. [U.C.C. § 9–501(4)], provides:

> "4. If the security agreement covers both real and personal property, the secured party may proceed under this part as to the personal property or he may proceed as to both the real and the personal property in accordance with his rights and remedies in respect of the

real property in which case the provisions of this part do not apply."

**5.** U.C.C. filing requirements for minerals or the like (including oil and gas) are set forth in Sections 41–09–40(1)(b) [U.C.C. § 9–401(1)(b)]; 41–09–41(1) & (5)]; 41–09–42(7) [U.C.C. § 9–403(7)]; and 41–09–44(2) [U.C.C. § 9–405(2)], N.D.C.C.

upon notification to Buckeye that it was enforcing its assignment of production. Furthermore, Redstone had constructive notice of the terms of the open-end mortgage and took its interest subject to Northern's right of assignment. *See Burlington Northern, Inc. v. Hall,* 322 N.W.2d 233 (N.D.1982).

For reasons stated in this opinion, the partial summary judgment is affirmed.[6]

ERICKSTAD, C.J., and LEVINE and GIERKE, JJ., concur.

VANDE WALLE, J., concurs in the result.

---

**6.** Shortly before oral argument on this appeal, Buckeye Petroleum Drilling Program 1981 and Canyon State Gas & Oil 1979–3 requested this Court to permit them to make a motion in district court pursuant to Rule 60(b), N.D.R. Civ.P., to vacate the summary judgment because of excusable neglect. For reasons similar to those expressed in *City of Minot v. Freelander,* 368 N.W.2d 514 (N.D.1985), we refrained from doing so pending this decision. Of course, those parties are free to seek relief from the trial court after our mandate is issued. Since the trial court had no jurisdiction to consider such a motion while this judgment was on appeal, *Buzzell v. Libi,* 340 N.W.2d 36 (N.D.1983), the trial court should no doubt consider the motion as having been made when the application for leave to make it was filed with this court, for purposes of weighing compliance with the "reasonable time" requirements of Rule 60(b), N.D.R.Civ.P. (if such a 60(b) motion is made with reasonable promptness after our mandate has issued).