**FEDERAL LAND BANK OF ST. PAUL, a body corporate, Plaintiff and Appellee,**

v.

**Thomas ASBRIDGE, a/k/a Thomas W. Asbridge, Jr.; Laura F. Asbridge, a/k/a Laura Asbridge, Defendants and Appellants,**

**and**

**First National Bank in Lemmon, a corporation, Defendant.**

**Civ. No. 11170.**

Supreme Court of North Dakota.

Oct. 20, 1987.

Tschider & Smith, Bismarck, for plaintiff and appellee; argued by Sean O. Smith.

Thomas M. Disselhorst, Bismarck, for defendants and appellants.

LEVINE, Justice.

Thomas and Laura Asbridge appeal from a summary judgment granting the Federal Land Bank of St. Paul (FLB) foreclosure of its mortgage on land owned by the Asbridges. We affirm in part, reverse in part and remand.

On May 24, 1983, the Asbridges and the FLB executed a promissory note for $676,-000, secured by a mortgage on real property in Grant County. The Asbridges failed to make their December 1, 1983 payment, and in March 1984, the FLB approved the Asbridges' loan for foreclosure. Thereafter, the Asbridges filed for bankruptcy and no further action was taken to foreclose the mortgage. The Asbridges voluntarily dismissed that bankruptcy proceeding on April 15, 1985, and the FLB commenced the instant action to foreclose the mortgage on June 7, 1985. The Asbridges answered, setting forth various affirmative defenses and counterclaims. The FLB moved for summary judgment. The district court concluded that there were no genuine issues of material fact and granted summary judgment in favor of the FLB. The Asbridges have appealed.[1]

1. During this appeal, the Asbridges again petitioned for bankruptcy. On July 27, 1987, the bankruptcy court entered an order lifting the automatic stay provisions of 11 U.S.C. § 362 as to this appeal.

Under Rule 56, N.D.R.Civ.P., a movant for summary judgment must show that there is no dispute as to either the material facts or the inferences to be drawn from undisputed facts and that he is entitled to judgment as a matter of law on the facts shown. If the movant fails to meet this initial burden, summary judgment is inappropriate even if the adverse party fails to respond by filing proof in opposition to the motion. *Northwestern Equipment, Inc. v. Badinger,* 403 N.W.2d 8 (N.D.1987). However, if the movant satisfies this initial burden, the adverse party may not rest upon mere allegations or denials but must respond by affidavit or as otherwise provided, setting forth specific facts showing that there is a genuine issue for trial. *First National Bank of Hettinger v. Clark,* 332 N.W.2d 264 (N.D.1983). Affidavits containing conclusory statements that are not supported by specific facts are insufficient to raise genuine issues of material fact. *First Commodity Traders v. Heinold Commodities,* 766 F.2d 1007 (7th Cir.1985); 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 2738, at 486–489 (1983). In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion who must be given the benefit of all favorable inferences which reasonably can be drawn from the evidence. *Northern Trust Co. v. Buckeye Petroleum Co.,* 389 N.W.2d 616 (N.D.1986).

The Asbridges contend that the district court erred in granting summary judgment because genuine issues of material fact existed regarding their defenses to the foreclosure action. They first argue that they were entitled to consideration of administrative forbearance on their loan obligations under the applicable FLB regulations and policies. The FLB responds that its affidavits establish that the Asbridges were granted administrative forbearance and the Asbridges' affidavits opposing the motion for summary judgment raise no genuine issues of material fact about administrative forbearance.

The federal Farm Credit Administration regulation at issue in this case, 12 C.F.R. § 614.4510(d)(1), provides:

"(d) In the development of the bank and association loan servicing policies and procedures, the following criteria shall be included:

"(1) *Term loans.* The objective shall be to provide borrowers with prompt and efficient service with respect to justifiable actions in such areas as personal liability, partial release of security, insurance requirements or adjustments, loan division or transfers, conditional payments, extensions, deferments or reamortizations. Procedures shall provide for adequate inspections, reanalysis, reappraisal, controls on payment of insurance and taxes (and for payment when necessary), and prompt exercise of legal options to preserve the lender's collateral position or guard against loss. *The policy shall provide a means of forbearance for cases when the borrower is cooperative, making an honest effort to meet the conditions of the loan contract, and is capable of working out of the debt burden.* Loan servicing policies for rural home loans shall recognize the inherent differences between agricultural and rural home lending." [Emphasis added.]

The applicable forbearance policy, Policy 2500,[2] provides in relevant part:

"2. 25 to 30 days after the due date, send a letter to the borrower requesting payment of the delinquency. If not paid, request the borrower to contact the association to work out an acceptable repayment plan. (See Exhibit 2540.)

"3. In the event the association does not receive a response to the above notice or letter, attempt to personally contact the borrower, if at all feasible. This may be an appropriate time to complete the Loan Servicing Report, Form 2400.

---

**2.** The forbearance procedure, Policy 2540, Serving Delinquent Accounts, provided in relevant part:

"The following is an example of a procedure for servicing past due accounts. This example may be used as a structure which an association can tailor to its needs.

"1. 10 to 15 days after an unpaid installment is due, mail a Reminder of Installment, Form 2485, to the borrower.

"In lieu of sending a reminder, contact the borrower by telephone.

"When circumstances beyond the borrower's control prevent prompt payment, appropriate assistance may be granted providing the borrower is:

"1.  Doing his/her best,

"2.  Applying the proceeds of production after paying necessary living expenses, to pay primary obligations.

"3.  Taking proper care of the security, and

"4.  Able to work his/her way to the point where he/she can manage their debt.

\*   \*   \*   \*   \*   \*

"Borrowers who qualify for assistance may be granted a formal or informal extension, a deferment of principal, or may have the loan reamortized.

"If a borrower is not eligible for assistance, the borrower should be encouraged to obtain other financing or secure the necessary funds from another source."

In *Federal Land Bank of St. Paul v. Overboe,* 404 N.W.2d 445 (N.D.1987), we held that the failure of the FLB to comply with the administrative forbearance regulation and policies adopted pursuant to the regulation is a valid equitable defense in a foreclosure action under state law. We said that when a borrower relies on the administrative forbearance defense in a mortgage foreclosure action, the court should initially make findings of fact on whether a forbearance policy has been adopted and, if so, whether that policy was

applied to the borrower in the case before it, *i.e.,* whether the borrower's qualifications for forbearance relief were considered in accordance with the policy. If an administrative forbearance policy has not been adopted or the borrower's qualifications for forbearance have not been considered, then foreclosure is not available. If, however, a policy has been adopted and the borrower's qualifications for forbearance have been considered, judicial review of the substantive decision about forbearance is limited. A trial court may not overturn a loan officer's determination of ineligibility for forbearance relief unless the borrower can prove that the FLB abused its discretion by acting in an arbitrary, capricious, unreasonable or unconscionable manner. We also said that a reasonable interpretation of the forbearance policy involved in that case, which is similar to the policy in this case, required that methods of forbearance relief (deferring payments or restructuring the loan) be considered by a loan officer in determining whether the borrower is capable of working his way out of the existing burden of debt. In that case, we affirmed a trial court's finding of fact that the FLB did not consider the borrower's qualifications for forbearance in accordance with its policy.

In this case it is undisputed that the FLB has adopted a policy of forbearance. The affidavit of the FLB credit officer, James Lee,[3] establishes that the FLB analyzed the

"4.  45 to 60 days after the due date, send a letter to the borrower to the effect that unless the delinquency and overtime interest are paid prior to a specific date (normally 10 to 30 days from the date of this letter), the loan will be considered for foreclosure action.

"5.  If the borrower does not respond to the above letter, or fails to carry out a plan for settlement of delinquencies as agreed, the loan should be presented for a foreclosure recommendation. Notify the borrower by registered letter of the decision to foreclose and give a specific date to place the loan current, normally 15 days from the date of the letter.

"If payment is not received, the association should be prepared to follow through immediately subsequent to the above date."
Policy 2550 provided:
"Before a loan is recommended for foreclosure, give the borrower ample considera-

tion by complying with Section 2540 to assure that all basic loan servicing procedure has been followed.

"Foreclosure is justified when any one or more of the following apply:

"1.  The borrower is not doing his/her best.

"2.  The borrower is not applying the proceeds of production to primary obligations, after paying necessary living expenses.

"3.  The borrower is not taking proper care of the security.

"4.  The borrower is unable to work his/her way to the point where he/she can manage their debt."

3.  Lee's affidavit provides, in relevant part:
"After following all policy procedures an analysis of the Asbridge operation and loan indicated that Mr. Asbridge was unable to work his way to the point where he could

Asbridges' financial information in accordance with its policy procedures and determined that the Asbridges were not capable of working their way out of the existing burden of debt because they could not obtain a source of short-term financing. Lee's affidavit further establishes that the Asbridges were given an extension of time to obtain other sources of short-term financing and that the FLB complied with the internal policy procedures of 2500, 2540, and 2550 in servicing the Asbridges' loan. Lee's affidavit was sufficient to establish that the FLB applied its forbearance policy to the Asbridges.

The Asbridges did not present evidence by affidavit or otherwise to refute that the FLB complied with its internal policies in analyzing their financial information and determining they were unable to work their way out of debt, that they were unable to obtain short-term financing and were granted an extension of time to secure such financing, that they were unable to work their way out of debt with forbearance, or that the FLB abused its discretion

and acted in an arbitrary, capricious or unreasonable manner in reaching its substantive decision about forbearance. While Tom Asbridge's affidavit raises an issue of fact over whether the FLB notified him of the considerations that the FLB gave to the loan, the Asbridges have cited no authority requiring such notification.

■ We therefore conclude that the Asbridges did not present specific facts raising a genuine issue of material fact for trial and the trial court properly granted summary judgment on the defense of administrative forbearance.[4]

■ The Asbridges also contend that the FLB has a fiduciary responsibility to act in good faith and to provide its member borrowers with all necessary information so that borrowers may make timely payments. The Asbridges rely exclusively on an unreported case from Iowa in which a jury apparently found that the PCA had violated such a fiduciary duty. Assuming, arguendo, that a fiduciary relationship may exist under some circumstances between farmers and those who implement the pro-

---

manage his debt. Thomas Asbridge could simply show no repayability of his Federal Land Bank obligation based upon his failure to secure a source for short term financing.

"During the period of the delinquent payment I received Thomas Asbridge's financial statements and income and expense statement projections used in his application for short term credit with the First Bank in Lemmon. An analysis was done on the viability of Thomas Asbridge's feeder operation. A review of all financial statements and income tax returns in the Federal Land Bank file indicated that Thomas Asbridge had sustained a large and substantial loss in the feeder cattle business in the fall of 1983. This loss sustained in the cattle operation had a substantial effect on his financial position. As of March 21, 1984 Thomas Asbridge still had not secured a short term creditor to finance his entire cattle operation. Without the necessary short term financing, he would not be able to continue his cattle operation because he would not be able to purchase enough feeder cattle to make his operation show repayability.

"Prior to the time that the foreclosure of the Asbridge loan was approved by the Federal Land Bank Association Board of Directors I had analyzed the viability of his feeder cattle operation. Mr. Asbridge's unit was highly dependent upon the existence of a short term financial lender to supply the necessary capi-

tal funds to finance the operation so he would have a positive repayment position. At the time that the Asbridge loan was recommended for foreclosure Mr. Asbridge indicated that he could not secure any short term creditors to fund his operation. Without the necessary short term financing, Mr. Asbridge could not purchase enough cattle to show any repayability of his Federal Land Bank payments. The financial position of Mr. Asbridge at the time the Asbridge loan was recommended for foreclosure indicated that he was unable to work his way to the point where he could manage his debt and show repayability of the Federal Land Bank obligation. In handling the Asbridge loan I have followed and complied with the internal policy procedures which are set forth in the policy procedures #2500, #2540 and #2550....

\* \* \* \* \* \*

"The defendants Asbridge were given a period of forbearance for the months of December, 1983, January, February and March of 1984."

4. Our resolution of this issue is dispositive of the Asbridges' argument that the FLB violated their due process rights under the fifth amendment of the United States Constitution because it failed to offer them adequate consideration under its policies concerning forbearance and debt restructuring.

visions of the Farm Credit Act [*see Creech v. Federal Land Bank of Wichita,* 647 F.Supp. 1097 (D.Colo.1986); *Boyster v. Roden,* 628 F.2d 1121 (8th Cir.1980) ], the Asbridges have not presented evidence by affidavit or otherwise raising even an inference of the existence of a fiduciary relationship between themselves and the FLB. While Tom Asbridge's affidavit may suggest a fiduciary relationship between the Asbridges and the First Bank of Lemmon, it raises no suggestion of a similar relationship between the Asbridges and the FLB.

■ The Asbridges next contend that material issues of fact exist as to the availability of the confiscatory-price defense, N.D.C.C. Ch. 28–29. We agree.

We have recognized the importance of the policy of judicial forbearance codified in our confiscatory-price defense statutes. *E.g., Federal Land Bank of St. Paul v. Halverson,* 392 N.W.2d 77 (N.D.1986); *Federal Land Bank of St. Paul v. Thomas,* 386 N.W.2d 29 (N.D.1986). In *Thomas, supra,* we explained that whether or not a farm emergency exists is a question of fact and we held improper summary judgment foreclosing a real estate mortgage where the mortgagor filed an affidavit setting out the confiscatory-price defense. Similarly, in *Halverson, supra,* we noted that the confiscatory-price defense statutes embody a policy of forbearance or delay in enforcing a debt by the exercise of patience or restraint. We again reversed the trial court's granting of a summary judgment of foreclosure. *Thomas, supra,* and *Halverson, supra,* are indicative of a strong policy favoring a hearing on the merits if the confiscatory-price defense is adequately raised.

In this case the lower court's decision was made before our decisions in *Thomas, supra,* and *Halverson, supra.* Without the guidance of those decisions, the trial court concluded that "there is no economic crisis upon which Chapter 28–29 can be implemented at this time."

The court's determination is a finding of fact which renders summary judgment inappropriate. Under summary judgment standards, the evidence must be viewed in the light most favorable to the party opposing the summary judgment motion. *Northern Trust Co. v. Buckeye Petroleum Co., supra.* The Asbridges' affidavits stated that prices were too low to allow them to recover even half of the cost of production and that price structures in agriculture were confiscatory. Viewing that evidence in the light most favorable to the Asbridges, we conclude that a genuine issue of material fact exists about the confiscatory-price defense and we reverse the summary judgment as to that defense.

■ The Asbridges next contend that the lower court erred in dismissing their counterclaims because further discovery was necessary. Under N.D.R.Civ.P. 56(f), the Asbridges could have brought to the trial court's attention reasons justifying further affidavits or discovery. This they did not do. Accordingly, we conclude that the district court properly granted summary judgment on this issue.

The district court judgment is affirmed in part, reversed in part, and the case is remanded for further proceedings consistent with this opinion.

ERICKSTAD, C.J., and MESCHKE, GIERKE and VANDE WALLE, JJ., concur.