FEDERAL LAND BANK OF ST. PAUL, a body corporate, Plaintiff and Appellee,

v.

Thomas ASBRIDGE, a/k/a Thomas W. Asbridge, Jr.; Laura F. Asbridge, a/k/a Laura Asbridge; Defendants and Appellants,

and

First National Bank in Lemmon, a corporation, Defendant.

Civ. No. 900337.

Supreme Court of North Dakota.

Aug. 5, 1991.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for plaintiff and appellee; argued by Jon R. Brakke.

Disselhorst Law Office, Bismarck, for defendants and appellants; argued by Thomas M. Disselhorst.

MESCHKE, Justice.

Laura and Thomas Asbridge appeal a judgment for Farm Credit Bank of St. Paul, successor to Federal Land Bank of Saint Paul, decreeing foreclosure of a mortgage on a 6,330–acre ranch to satisfy a $1,455,938.68 debt in default since 1983. Asbridges seek more delay, arguing that the trial court failed to join a necessary party, overlooked the Bank's noncompliance with the Federal Agricultural Credit Act of 1987, and misapplied statutes authorizing procedural delays in a foreclosure. We affirm the foreclosure decree.

Asbridges mortgaged their ranch to the Bank for a $676,000 loan on May 24, 1983, but missed paying the initial installment due on December 1, 1983. After delay for the first bankruptcy filed by Asbridges, the Bank sued to foreclose in June 1985. In January 1986, the trial court entered summary judgment of foreclosure for the Bank, and Asbridges appealed. After delay for another bankruptcy filing by Asbridges, we reversed the summary judgment. *Federal Land Bank of St. Paul v. Asbridge*, 414 N.W.2d 596 (N.D.1987). We remanded for trial on statutory, confiscatory-price-delay defenses.

Congress then enacted the Federal Agricultural Credit Act of 1987, requiring an opportunity for all delinquent borrowers from Federal Farm Credit entities to seek restructuring of their debts. Asbridges applied for restructuring, their application was denied, and their appeal to a review committee was unsuccessful.

Meanwhile, Asbridges did not pay the 1983 real estate taxes on the ranch, resulting in a 1984 tax sale to Grant County. For the most part, taxes went unpaid thereafter. In May 1989, Grant County served notices that the time to redeem from the tax sale would expire on October 1, 1989. Another person, Percy Fibelstad, paid the delinquent taxes before that deadline. After the deadline, Fibelstad claimed to be a tax sale purchaser and sought a tax deed from Grant County, but the county auditor refused to issue one. Fibelstad then brought a mandamus action against Grant County to obtain a tax deed. When the

Bank sought to intervene, the trial court converted that action into a quiet title action, and joined Asbridges and the Bank as defendants. A trial resulted in a judgment that Fibelstad had no tax title to the ranch because the tax sale was invalid. Fibelstad appealed. *See Fibelstad v. Grant County,* 474 N.W.2d 54 (N.D.1991). In *Fibelstad,* we modify the judgment, holding that the tax sale was invalid, by directing that the Bank must deposit the amount of the delinquent taxes, penalties, and interest in court in order to take advantage of the invalidity.

In January 1990, Asbridges sought to delay this foreclosure because Fibelstad's quiet title action was pending. The trial court denied a continuance. After delay for still another bankruptcy filing by Asbridges, trial of this foreclosure was scheduled for May 22, 1990.

On April 27, 1990, Asbridges moved to join Fibelstad and the auditor of Grant County as necessary parties to this foreclosure or, alternatively, to delay trial until Fibelstad's litigation over the tax title was finally decided. The trial court denied these motions just before trial, ruling that "the claims being asserted by the parties the Asbridges wish to join in this litigation are independent in nature from the claims which may properly be raised in this case," and that "[t]he rights of the parties the Asbridges seek to join will not be prejudiced if this action goes forward in their absence."

After trial, the trial court ruled that the Bank had taken "in an equitable, reasonable manner ... the appropriate steps to comply with the federal [Agricultural Credit] act [of 1987]." The trial court also denied any confiscatory-price delay, ruling that Asbridges had "completely failed in presenting ... any rational concept or testimony which would allow this Court to find that prices are confiscatory across the state." Foreclosure sale was decreed.

On appeal, Asbridges seek more delay. They argue that this case should be remanded and continued "until such time as there has been a final adjudication in the case of *Fibelstad v. Grant County, et al.,*" and that the case should be remanded for another opportunity for the Asbridges "to present a plan of restructuring to Farm Credit Bank of St. Paul pursuant to the Agricultural Credit Act of 1987." Asbridges also seek remand to allow the trial court to consider additional delay under the so-called confiscatory-price-defense statutes, arguing that the evidence showed that "commodity prices were still confiscatory as they applied to the Asbridges."

## I. *Delay for Joining Parties*

■ Asbridges correctly forecast that, if Fibelstad establishes tax title, the Bank's foreclosure will be fruitless. Loss of the land for taxes will bar the Bank from enforcing its mortgage. *H & F Hogs v. Huwe,* 368 N.W.2d 553 (N.D.1985). Asbridges seek to adapt this potential to their advantage, though not as a bar to a deficiency judgment against them, as in *H & F Hogs,* since the Bank does not seek a deficiency. Rather, Asbridges propose this potential as a reason for additional delay of the foreclosure. Asbridges urge that not to join Fibelstad, or not to delay foreclosure pending the outcome of Fibelstad's lawsuit, "present[s] an enormous prejudice to the Asbridges and to Fibelstad."

Asbridges argue that "the foreclosure action going forward to conclusion puts Fibelstad's present rights to peaceable possession of the property at risk because of the possibility that Farm Credit Bank will gain possession before his claim is resolved." Without any showing of privity between Asbridges and Fibelstad, Asbridges have no standing to assert an absent stranger's interests. Asbridges' only connection with Fibelstad, they say, is that they "are less likely to be subject to an eviction action by Fibelstad, someone the Asbridges know, than by Farm Credit Bank." That hope is not a legal reason to delay this foreclosure further.

As the trial court ruled, Fibelstad's tax claim to the ranch is independent of the Bank's mortgage claim. Whatever their separate interests in Fibelstad's quiet title action may be, Asbridges' interest is subordinate to the mortgage interest of the Bank. Disposition of this case in Fibel-

stad's absence will not impair his ability to protect his own interest in the tax title action. Nor will Fibelstad's absence leave Asbridges subject to any risk of incurring multiple obligations. These factors are the criteria relevant here under NDRCivP 19(a) for joinder of a necessary party. *See Erdmann v. Thomas*, 446 N.W.2d 245 (N.D.1989); *Kouba v. Great Plains Pelleting, Inc.*, 372 N.W.2d 884 (N.D.1985). We conclude that the trial court properly refused joinder of Fibelstad as a party necessary for this foreclosure.

Asbridges also argue that they are prejudiced "without Fibelstad's claim first being fully adjudicated," because they are "subjected to an unnecessary trial, Sheriff's sale, appeals, and so forth in order to try to protect their property." However, the prejudice of legal proceedings is the usual consequence of default on a mortgage, not an unnatural development. There is no legal reason why Asbridges should get an additional advantage for not paying their taxes. A greater default does not justify greater delay.

## II. *Delay for Restructuring*

■ Asbridges ask for a remand to present another restructuring plan to the Bank under the Agricultural Credit Act of 1987. The trial court determined that the Bank "complied with the procedural requirements of the Act and the Policy and that the substantive decision to deny the ... Asbridge's application for restructuring was made in accord with the Act and Policy." The trial court concluded that "there is no evidence that the decision to deny the application for restructuring was an abuse of discretion ... or a decision reached in an arbitrary, capricious, unreasonable or unconscionable manner." From our review, we agree with the trial court.

Asbridges argue in generalities that they were denied procedural due process and denied a proper evaluation of their restructuring plan. Procedurally, Asbridges argue that they were "not given any criteria ... by which to determine how to formulate a plan of restructuring" and that they were "denied any opportunity to amend their plan." The trial court found, however, that the Bank had properly notified Asbridges "of the restructure application process and [that] the forms enclosed therein[ ] conformed with the requirements of the [applicable] Seventh District [Farm Credit Services] Policy." The trial court determined that Asbridges were "notified that [they] could meet with a representative of the [Bank] to review the status of [their] loan, [their] financial condition, the suitability of [their] loan for restructuring, and the possibility of developing a plan for restructuring." Instead, the Asbridges did nothing to approach the Bank about the acceptable range of restructuring options before proposing their plan.

As the trial court found, Asbridges proposed that their debt be reduced from $1,200,000 to $256,000 although the market value of the ranch was then appraised by the Bank at $698,070. Asbridges also proposed that this reduced debt be reamortized over a 30–year term at 9% interest, although market interest rates were then 12%. The trial court found that the Bank properly "rejected the proposal[ ] on the basis [ ] that the cost of restructuring far exceeded the cost of foreclosure."

■ Only if the lender determines that the potential cost of restructuring a loan is less than or equal to the potential cost of foreclosure, must the lender restructure the loan. 12 U.S.C. § 2202a(e)(1); *Federal Land Bank of St. Paul v. Bosch*, 432 N.W.2d 855, 858 (N.D.1988). The trial court found that the Bank adhered to the requirements of its policy "[i]n determining the difference between the cost of restructure versus the cost of foreclosure" and that the "facts utilized ... were in accordance with the Policy, and were appropriate and rational." We agree. The trial court's findings are supported by the evidence and are not clearly erroneous.

■ The trial court concluded that the Bank's "decision to deny the application for restructuring was [not] an abuse of discretion ... or a decision reached in an arbitrary, capricious, unreasonable or unconscionable manner." On appeal, we do not disturb the trial court's determination

about the lender's compliance with federal regulations on forbearance or restructuring unless the abuse-of-discretion standard of review was misapprehended or grossly misapplied. *Federal Land Bank of St. Paul v. Overboe*, 404 N.W.2d 445, 450 (N.D.1987). Asbridges' proposed plan was out of kilter with the applicable criteria that were properly used by the Bank to calculate and compare the costs of restructuring with the costs of foreclosure.

Since Asbridges themselves failed to submit a restructuring plan in keeping with applicable criteria, they were not denied a fair opportunity to restructure. Moreover, when their application to restructure was denied, Asbridges were notified: "If you have information pertaining to your proposal that was not previously submitted, you need to complete a new proposal which includes the previously submitted and new information." Asbridges chose not to submit anything further. The Agricultural Credit Act of 1987 does not command interminable efforts at restructuring, but only constrains foreclosure until "the lender has completed any pending consideration of the loan for restructuring...." 12 U.S.C. § 2202a(b)(3); *Farm Credit Bank of St. Paul v. Huether*, 454 N.W.2d 710 (N.D.1990). We affirm the trial court's determination that the Bank fairly considered and refused Asbridges' restructuring plan under the applicable federal criteria.

1. NDCC 28–29–04 says:
   *Power of courts when prices are confiscatory.*— Until the price of farm products produced in this state shall rise to a point to equal at least the cost of production, in comparison with the price of other commodities in general, entering into the business of agriculture, the supreme court of this state and all district and county courts in this state shall have power, when it is deemed for the best interests of litigants, to extend the time for serving and filing all papers requisite and necessary for the final determination of any cause. Any such court, in like manner, may stay the entry of judgment or the issuance of execution thereon, or may defer the signing of any order for judgment, or may defer terms of court, whenever in the judgment of the court the strictly legal procedure in any cause will confiscate or tend to confiscate the property of any litigant by forcing the sale of agricultural products upon a ruinous market.

2. NDCC 28–29–05 says:

We see neither an equitable reason nor a federal directive to prolong this much delayed foreclosure to allow Asbridges another chance to apply for restructuring.

### III. *Delay for Depressed Prices*

Asbridges argue that the trial court misapplied statutes that authorize discretionary delays in foreclosure procedures during an agricultural depression. NDCC 28–29–04,[1] 28–29–05,[2] and 28–29–06.[3] In particular, Asbridges complain that the trial court unduly limited Thomas Asbridge's testimony by excluding evidence about commodity prices before 1989. Because they first asserted confiscatory-price defenses in 1985, Asbridges contend that they "should be entitled to the benefits of that period, including a suspension of Farm Credit Bank's foreclosure efforts[ ] for the requisite period of time in which prices during that period were confiscatory." Furthermore, Asbridges argue, the confiscatory nature of agricultural prices should not be measured on a statewide basis. Instead, Asbridges insist, "the determination of how the defense applies must be made as to the individual borrower." Finally, urging that there was "[n]o evidence contradicting the fact that commodity prices were still confiscatory as they applied to the Asbridges," Asbridges ask us to conclude that the trial court misapplied the statutes.

*Courts may delay orders in foreclosures.*—Whenever any foreclosure proceeding is pending in any court in this state and the amount of the debt is less than the value of the property involved, and when any order for judgment will have the force and effect of depriving a defendant of his home and confiscating his property, the court may construe further proceedings to be unconscionable, and may delay the signing of such order to such time as it shall deem it advisable and just to enter the same.

3. NDCC 28–29–06 says:
   *Public policy.*—Any court mentioned in section 28–29–04 may take judicial notice of the situation of producers and laborers when prices of farm products are confiscatory, and upon the ground of public policy may do all things necessary to be done lawfully to carry out the provisions of sections 28–29–04 and 28–29–05.

Early in Thomas Asbridge's direct testimony, the trial court sustained the Bank's objections to the relevance of questions about Asbridges' use of loan proceeds in 1983. In doing so, the trial court indicated that "[w]e have to look at what is the situation today," but agreed that "[t]here is a relevant period of time." Yet, Asbridge went on to testify that "[t]he price for commodities I receive is insufficient to allow me enough income to repay my indebtedness. Indebtedness was based upon specifics that occurred in the early eighties and this is now substantially different."

Thomas Asbridge testified that their current annual income from operating with 250 cows, as well as keeping their calves and yearlings, was only enough to currently pay annual operating expenses of $60,000 as well as family living expenses, and was not enough to pay an additional $80,000 or more in annual debt service. In addition to raising livestock, Asbridges raise oats and hay but only for livestock feed. Asbridge acknowledged that livestock prices in 1989 were "pretty high" at "approximately 85 cents [per pound] on 870 pound steers," and that the 1990 livestock market was "very good." Still, Asbridge testified that "those prices received are far less than what is necessary to cover expenses ...," including debt service.

■ A summary of the mortgagors' assets, debts, and history of operations is important to proper consideration of procedural delays for depressed agricultural prices under the confiscatory-price statutes. See Gress v. Kocourek, 427 N.W.2d 815, 817 (N.D.1988). Still, Asbridge was allowed to testify at some length in comparing their current ranching operations with their operations in the late seventies and early eighties when, together with other land, the ranch operated with 1,600 yearlings. Asbridge contrasted those earlier operations with a current capacity to operate at 400 cows and their yield through yearlings, and with current operations at only 250 cows and their yield through yearlings. On the whole, Thomas Asbridge's testimony was not unduly restricted.

■ The trial court has wide discretion to control the introduction of evidence. NDREv 403. Even relevant evidence may be excluded when other considerations of undue delay, waste of time, or needless cumulation outweigh its probative value. Explanatory Note, NDREv 403. It is seldom reversible error for a trial court to admit incompetent or irrelevant evidence in a trial without a jury. Fuhrman v. Fuhrman, 254 N.W.2d 97 (N.D.1977). Still, the trial court's broad discretion controls unless a substantial right is affected. NDREv 103. Since Asbridges are unable to identify the omission of any important information by the trial court's exclusion of some history of this debt, we conclude that the error, if any, was harmless.

The judicial power of forbearance through procedural delays in executions and foreclosures is authorized by statutes, collectively called the confiscatory-price defenses, inherited from the great agricultural depression of the 1930s. Federal Land Bank of St. Paul v. Halverson, 392 N.W.2d 77 (N.D.1986). Asbridges disclaim reliance on NDCC 28–29–05, effectively acknowledging that their debt greatly exceeds the value of their property mortgaged as security. Asbridges chiefly rely on NDCC 28–29–04 which empowers a court, in its discretion, to delay foreclosure procedures when the prices of agricultural products are below the cost of their production. Federal Land Bank of St. Paul v. Lillehaugen, 404 N.W.2d 452, 456 (N.D.1987). This defense is not absolute.

■ In applying a confiscatory-price defense, a court cannot relieve mortgagors from making payments, cannot compel a mortgagee to accept less than the amount due, and cannot discharge mortgagors from their obligations. Lillehaugen; Folmer v. State, 346 N.W.2d 731, 735 (N.D.1984). Whether or not a farm emergency exists, to authorize discretionary procedural delays, is a question of fact reviewable under the clearly-erroneous standard of NDRCivP 52(a). Asbridge, 414 N.W.2d at 601. These standards guide our analysis here.

In addition to Thomas Asbridge's testimony about his circumstances, the trial court heard the testimony of the Bank's expert, Dr. Cole Gustafson, a professor of agricultural finance in the Agricultural Economics Department of North Dakota State University. From his research and studies, Dr. Gustafson opined that, for the vast majority of North Dakota's farmers and ranchers in recent years, agricultural revenues have exceeded production costs. For a rancher with a cow-calf operation, Dr. Gustafson testified that for 1988 the average gross income per cow was over $478 and the average expense per cow was $230. He testified that revenues and expenses of ranchers during 1989 and 1990 were comparable. In Dr. Gustafson's opinion, the price of all farm products produced in this state during these same years exceeded the costs of production.

From the evidence, the trial court found that "prices of farm products within the State of North Dakota at this time are not confiscatory." The trial court determined that "[t]here does not now exist an economic hardship or crisis" in North Dakota's agricultural economy, and that foreclosure of this mortgage would not "forc[e] the sale of farm commodities on a ruinous market." The trial court also found that, "[g]iven the limited profitability of the defendant Asbridge's farming operation, a stay of reasonable length would not be effective to permit the defendants Asbridges to satisfy the debt owed...."

The trial court concluded that additional delays of the foreclosure against Asbridges should not be granted "since there is no reasonable likelihood that [Asbridges] would be able to fulfill [their] entire obligations under the mortgage within a reasonable period of time." Foreclosure was decreed without additional delay. Whatever the cumulative effects and current realities of drought and low prices may be for other agricultural producers in this state, the evidence in this record supports the trial court's findings and conclusions.

Of course, there are both generalized and individualized aspects to an agricultural depression. In general, economic conditions for livestock operators have improved in recent years. See NDCC 28–29–06 at note 3 above. But a modest economic recovery may not save every hardpressed producer following a depression, even with substantial delay. We believe that the trial court fairly considered both general agricultural conditions and the particular effects of those conditions on Asbridges' economic situation.

The sheer size of Asbridges' debt and defaults, without any payments for over seven years except a small $1,000 payment during one bankruptcy delay, suggests little equitable standing for more delay. It is the extremely indebted and deeply distressed nature of Asbridges' operations, more than a ruinous market for their produce, that makes their situation hopeless. Given the accumulated delays exceeding seven years, combined with constant increases of Asbridges' debt, we conclude that the trial court did not misapply the confiscatory-price statutes in declining more delay in this case.

We affirm the foreclosure decree.

ERICKSTAD, C.J., and VANDE WALLE, J., VERNON R. PEDERSON, Surrogate Judge and LAWRENCE E. JAHNKE, District Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, and LAWRENCE E. JAHNKE, District Judge, sitting in place of LEVINE and GIERKE, JJ., disqualified.

VANDE WALLE, Justice, concurring specially.

I agree with the result reached in the majority opinion and much of the rationale thereof. I also agree costs of production should not be determined as to each farmer individually. But, I write to express my understanding that the majority opinion does not hold that the prices of all agricultural commodities produced in this State and the costs of production for those commodities are to be averaged to determine if the costs of production exceed revenues and, thus, whether the prices are confiscatory under statutes.

Livestock prices are high, but durum and other small grain prices are exceedingly low at the time of this decision. To average them together is prejudicial to the farmer who produces only small grains and prejudicial to the lender who is attempting to foreclose on what is, as here, a livestock operation. Averaging the two together is appropriate for a diversified farming operation, but not otherwise.

LAWRENCE E. JAHNKE, District Judge, concurs.